**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

ERIK KNIGHT, individually and on behalf of
others similarly situated,

        Plaintiff,

    v.

PROGRESSIVE NORTHWESTERN
INSURANCE COMPANY,

        Defendant.

Case No. 3:22-cv-00203-JM

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**<u>FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................................... 1

II.   ABBREVIATED PROCEDURAL HISTORY OF THE ACTION ................................. 4

III.  LEGAL STANDARD .................................................................................................... 7

IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........................... 8

    A.  Whether Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the
       Classes ........................................................................................................... 8

    B.  Whether the Settlement Was the Result of Good Faith, Arm's-Length
       Negotiations ................................................................................................. 10

    C.  Whether the Relief Provided to the Classes Is Adequate ................................ 11

    D.  Whether the Settlement Treats Class Members Equitably Relative to Each Other ....... 13

    E.  The Other Rule 23(e)(2)(C) Factors Are Met .................................................. 14

       1.  The Proposed Method for Distributing Relief Is Effective ....................... 14

       2.  Attorneys' Fees and Expenses ................................................................ 15

       3.  The Parties Have No Other Agreements Besides the Settlement. ............. 16

V.    THE PROPOSED SETTLEMENT CLASSES SATISFY RULE 23 AND SHOULD
     BE APPROVED ........................................................................................................... 16

VI.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE
     PROCESS REQUIREMENTS AND SHOULD BE APPROVED ................................... 18

VII.  PROPOSED SCHEDULE OF EVENTS ...................................................................... 20

VIII. CONCLUSION ............................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Ambrosio v. Progressive Preferred Ins. Co.*,
   2024 WL 915184 (D. Ariz. Mar. 4, 2024) ................................................................ 12

*Ambrosio v. Progressive Preferred Ins. Co.*,
   No. 24-1633 (9th Cir. 2024) ..................................................................................... 12

*Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*,
   2017 WL 2574005 (D. Minn. June 14, 2017) ............................................................ 8

*Braynen v. Nationstar Mortg., LLC*,
   2015 WL 6872519 (S.D. Fla. Nov. 9, 2015) ............................................................ 19

*Campbell v. Transgenomic, Inc.*,
   2019 WL 3003920 (D. Neb. July 10, 2019) .............................................................. 20

*Carlson v. C.H. Robinson Worldwide, Inc.*,
   2006 WL 2671105 (D. Minn. Sept. 18, 2006) .......................................................... 16

*Cook v. Gov't Emples. Ins. Co.*,
   2020 U.S. Dist. LEXIS 111956 (M.D. Fla. Jun. 22, 2020) ................................... 9, 10

*DeBoer v. Mellon Mortg. Co.*,
   64 F.3d 1171 (8th Cir. 1995) .................................................................................... 16

*Drummond v. Progressive Specialty Ins. Co.*,
   No. 24-1267 (3d Cir. 2024) ...................................................................................... 12

*EEOC v. Faribault Foods, Inc.*,
   2008 U.S. Dist. LEXIS 29132 (D. Minn. Mar. 28, 2008) ........................................ 16

*Freeman v. Progressive Direct Ins. Co.*,
   No. 24-177 (4th Cir. 2024) ....................................................................................... 12

*Grant v. Ocwen Loan Servicing, LLC*,
   2019 U.S. Dist. LEXIS 14673 (M.D. Fla. Jan. 29, 2019) ........................................ 10

*Henson v. Progressive Premier Ins. Co. of Ill.*,
   2024 WL 3051264 (E.D.N.C. June 10, 2024) .......................................................... 12

*Huyer v. Van de Voorde*,
   314 F.R.D. 621 (S.D. Iowa 2016), *aff'd*, 847 F.3d 983 (8th Cir. 2017) ............ 12, 16

*In re CenturyLink Pracs. & Sec. Litig.*,
  2020 WL 7133805 (D. Minn. Dec. 4, 2020) .......................................................... 10

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
  396 F.3d 922 (8th Cir. 2005) .............................................................................. 8

*In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................. 16

*In re Zurn Pex Plumbing Products Liability Litigation*,
  2013 WL 716088 (D. Minn. Feb. 27, 2013) ......................................................... 13

*In re: E.W. Blanch Holdings, Inc. Sec. Litig.*,
  2003 WL 23335319 (D. Minn. June 16, 2003) ..................................................... 20

*Koenig v. U.S. Bank N.A. (In re U.S. Bancorp Litig.)*,
  291 F.3d 1035 (8th Cir. 2002) ............................................................................ 15

*Kroeger v. Progressive Universal Ins. Co.*,
  2023 WL 9059523 (S.D. Iowa Nov. 20, 2023) ..................................................... 12

*Nelson v. Wal-Mart Stores, Inc.*,
  2009 WL 2486888 (E.D. Ark. Aug. 12, 2009) ...................................................... 16

*Phillips v. Caliber Home Loans, Inc.*,
  2021 WL 3030648 (D. Minn. July 19, 2021) ....................................................... 11

*Schoenbaum v. E.I. Dupont De Nemours & Co.*,
  2009 WL 4782082 (E.D. Mo. Dec. 8, 2009) ........................................................ 17

*Schroeder v. Progressive Paloverde Ins. Co.*,
  24-1559 (7th Cir. 2024) ..................................................................................... 12

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
  2023 WL 1454371 (M.D. Pa. Feb. 1, 2023) ......................................................... 15

*Stuart v. State Farm Fire & Cas. Co.*,
  2020 WL 13539024 (W.D. Ark. Jan. 3, 2020) ............................................... 3, 7, 11

*White v. Nat'l Football League*,
  822 F. Supp. 1389 (D. Minn. 1993) ................................................................... 16

*Yarrington v. Solvay Pharms., Inc.*,
  2010 WL 11453553 (D. Minn. Mar. 16, 2010) ..................................................... 10

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................... 20
Fed. R. Civ. P. 23(a) .............................................................................................. 5, 17
Fed. R. Civ. P. 23(b)(3) .......................................................................................... 5, 17
Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................... 18
Fed. R. Civ. P. 23(e)(1)(B) .................................................................................. 7, 16, 18
Fed. R. Civ. P. 23(e)(2) .................................................................................... 3, 7, 8, 11
Fed. R. Civ. P. 23(e)(2)(A) ............................................................................................ 8
Fed. R. Civ. P. 23(e)(2)(C) .......................................................................................... 14
Fed. R. Civ. P. 23(e)(2)(C)(ii) ....................................................................................... 14
Fed. R. Civ. P. 23(e)(2)(C)(iii) ...................................................................................... 15
Fed. R. Civ. P. 23(e)(2)(D) .......................................................................................... 13
Fed. R. Civ. P. 23(f) ................................................................................................... 6

Plaintiffs Erik Knight and Jung Kim ("Plaintiffs") respectfully submit this Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.[1]

## I.    INTRODUCTION

After nearly three years of hard-fought litigation, Plaintiffs are pleased to announce that the parties have reached a settlement. Under their agreement, Arkansans who had insurance with *any* Progressive[2] entity that underwrites policies in the State will have an opportunity to recover 100% of the PSA deduction damages, tailored to their specific vehicle, with an average cash payment of $506. All of Class Counsel's attorney's fees and expenses and all notice and settlement administration expenses will be paid separately by Progressive and will not diminish Class Members' recoveries whatsoever. Absent settlement, this class action was approaching a jury trial set to commence on May 19, 2025. The Settlement was the result of an in-person mediation session on April 16, 2025, overseen by Steve R. Jaffe, an experienced and respected mediator with Upchurch Watson White & Max.

The Settlement was made possible only through years of hard-fought litigation against a Fortune 100 company and settled on the eve of trial. Plaintiffs brought this action alleging Progressive breached their insurance contract—specifically the provision that actual cash value ("ACV") "is determined by the market value, age, and condition" of a vehicle at the time of loss—

---

[1] Unless otherwise stated or defined: (a) all capitalized terms used herein have the meanings provided in the Stipulation of Settlement (the "Stipulation"), submitted herewith; (b) all internal citations and footnotes are omitted and all emphasis is added unless otherwise noted; and (c) all "¶ " and "¶¶_" citations are to the Amended Class Action [ECF No. 175-1] ("Complaint").

[2] As part of this Settlement, Progressive has agreed to include all five Progressive entities insuring individuals within Arkansas: Progressive Northwestern Insurance Company ("Progressive Northwestern"), Progressive Direct Insurance Company ("Progressive Direct"), Progressive Casualty Insurance Company ("Progressive Casualty"), Progressive Specialty Insurance Company ("Progressive Specialty"), and Progressive Classic Insurance Company ("Progressive Classic") (together, "Progressive").

by applying Projected Sold Adjustments ("PSA") as part of the process of calculating ACV. Progressive mounted a vigorous defense, which required Plaintiffs to (i) achieve contested class certification, which included reports and testimony from experts in the fields of the automotive industry, statistics, and property appraisals, (ii) defeat Progressive's petition for interlocutory review of the class certification order at the Eighth Circuit Court of Appeals, (iii) defend Progressive's motion for summary judgment; (iv) defeat Progressive's motions to exclude their expert witnesses, (v) successfully challenge Progressive's expert's testimony, and (vi) engage in in significant pre-trial preparations and proceedings. Further, Class Counsel has been litigating a parallel class action against Progressive Direct which began in the Circuit Court of Falkner County, Arkansas on October 4, 2024, to recover damages for all Progressive Direct customers in Arkansas, not to mention cases across the country in other states against Progressive which asserted materially similar claims.

In the lead up to trial, the parties participated in extensive mediation efforts with well-respected mediator Steve R. Jaffe. Before Settlement was achieved, Plaintiffs and their counsel were fully informed about the strengths and weaknesses of their claims and Progressive's defenses. As a result of these negotiations, Class Counsel obtained a Settlement that includes not just Progressive Northwestern but all five Progressive entities insuring vehicles in Arkansas, thus assuring all Progressive insureds may recover damages based on the PSA Impact to the ACV payments for their totaled vehicles.

The proposed Notice Program is robust, providing individualized notice *six times*—three postcard notices and three email notices[3]—to each Settlement Class Member identified through discovery and Progressive's claims data. By providing multiple mailed and emailed notices, the

---

[3] To ensure that the Notice Program is robust, Class Counsel agreed to pay separately for the third postcard and third email notices.

Notice Program will ensure that every Settlement Class Member has a full and fair opportunity to evaluate the Settlement and submit a claim. Each notice will include the average amount Settlement Class Members will recover. And participation could not be simpler. The postcard notices will include a detachable, pre-filled claim form (postage prepaid) requiring only confirmation that the pre-filled information is correct. The email notices will include a link to a pre-filled electronic version of the same simple claim form. Further, Class Counsel will request attorneys' fees not to exceed 30% of the total amount of funds made available to the Settlement Classes and reimbursement of litigation expenses not to exceed $112,000.00. Because Progressive has agreed to separately pay attorneys' fees (subject to Court approval), litigation costs, and the expenses of notice and administration—without reducing the payments to Settlement Class Members—these amounts constitute additional benefits to the Class and further support the Settlement's approval.

Plaintiffs contend certification of the Settlement Classes (which substantively mirror the Progressive Northwestern Class previously certified) is appropriate for the reasons previously articulated by this Court in its order granting class certification. Similarly, the appointments of Plaintiffs as the Settlement Class Representatives and of Class Counsel as Class Counsel for the Settlement Classes are appropriate, and this Court should affirm these appointments.

"When making a preliminary fairness evaluation, the 'fair, reasonable, and adequate' standard imposed by Rule 23(e)(2) is lowered, and the Court's focus is on whether the settlement is 'within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies.'" *Stuart v. State Farm Fire & Cas. Co.*, 2020 WL 13539024, at *1 (W.D. Ark. Jan. 3, 2020). The proposed Settlement here was negotiated at arm's length and is in every respect fair, adequate, reasonable, and in the best interests of the proposed Classes. Class Counsel believes this

is an excellent result.

Upon finding that a proposed settlement is preliminarily acceptable, the Court would direct that prompt notice be distributed to Settlement Class Members, providing them with an opportunity to be heard and potentially object to the Settlement at a final approval hearing, to be scheduled by the Court. *See, e.g.*, *id.* (describing two stages of settlement review). Accordingly, Plaintiffs and Class Counsel request that the Court enter the proposed Preliminary Approval Order so that notice may be promptly disseminated to the Settlement Class and a Final Approval other Settlement-related dates may be scheduled.

## II.    ABBREVIATED PROCEDURAL HISTORY OF THE ACTION

This Settlement is proposed on behalf of three Settlement Classes[4] defined as follows:

**Progressive Northwestern Class**: All persons who made a first-party claim on a policy of personal automobile insurance issued by Progressive Northwestern Insurance Company to an Arkansas resident where the claim was submitted from August 4, 2017, through the date an order granting Preliminary Approval is entered, and Progressive determined that the vehicle was a total loss and based its claim payment on an Instant Report from Mitchell where a Projected Sold Adjustment was applied to at least one comparable vehicle.

**Progressive Direct Class**: All persons who made a first-party claim on a policy of personal automobile insurance issued by Progressive Direct Insurance Company to an Arkansas resident where the claim was submitted from October 4, 2019, through the date an order granting Preliminary Approval is entered, and Progressive determined that the vehicle was a total loss and based its claim payment on an Instant Report from Mitchell where a Projected Sold Adjustment was applied to at least one comparable vehicle.

**Other Underwriters Class**: All persons who made a first-party claim on a policy of personal automobile insurance issued by Progressive Casualty Insurance Company, Progressive Specialty Insurance Company, or Progressive Classic Insurance Company to an Arkansas resident, and Progressive Casualty Insurance Company, Progressive Specialty Insurance Company, or Progressive Classic Insurance Company to an Arkansas resident where the claim was submitted within five years prior to the date an order granting Preliminary Approval is entered, and

---

[4] Excluded from the Classes are Defendants and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members.

Progressive determined that the vehicle was a total loss and based its claim payment on an Instant Report from Mitchell where a Projected Sold Adjustment was applied to at least one comparable vehicle.

Plaintiff Knight filed his class action complaint on August 4, 2022. *See* Declaration of Hank Bates ¶ 3. After Progressive Northwestern responded with an answer, the parties engaged in discovery and, on January 25, 2024, Plaintiff moved for class certification. *Id.* The Motion for Class Certification was supported with voluminous evidence, including four expert reports. *Id.* Progressive opposed the motion, supported by reports of its own experts, among other evidence. *Id.* Knight filed a reply in support of the Motion for Class Certification on April 25, 2024. *Id.*

After the Motion for Class Certification was fully briefed, the Court held a hearing on class certification on May 30, 2024. *Id.* ¶ 4. On July 1, 2024, the Court informed the parties via email that the Court "is going to grant Plaintiff's motion to certify the class" and requested a Notice Program. *Id.* Thus, on July 19, 2024, Plaintiffs submitted a Motion for Court to Approve Notice Program for Certified Class and Incorporated Brief, which was disputed. *Id.*

The parties continued vigorously litigating this action, including briefing several substantive motions. *Id.* ¶ 5. Knight moved to exclude the expert testimony of Progressive's experts Jonathan Walker and Marc Spizzirri, while Progressive moved to exclude the expert testimony of Knight's experts Kirk Felix, Jeffrey Martin, Dr. Michelle Lacey, and Jason Merritt. *Id.* These motions were fully briefed. *Id.* Progressive also moved for summary judgment, which Plaintiff Knight opposed. *Id.*

On December 19, 2024, this Court entered an order granting Plaintiff's Motion for Class Certification. *Id.* ¶ 6. The Court found that the proposed class of Progressive Northwestern insureds meets every requirement of Federal Rule of Civil Procedure of 23(a) and 23(b)(3), including that Plaintiff Knight is an adequate and typical Class member and that common issues predominate concerning the contractual claim. *Id.* Plaintiff Knight filed a Notice Program shortly

after the Court granted the motion, which the Court entered with minor modifications. *Id.*

Progressive filed a Rule 23(f) petition with the Eighth Circuit Court of Appeals seeking interlocutory review of the order granting class certification. *Id.* ¶ 7. After the petition was fully briefed, the Eighth Circuit denied the petition. *Id.*

After the Court granted class certification, Plaintiff Knight moved in limine to exclude any evidence of NADA and KBB guidebook values. *Id.* ¶ 8. Progressive opposed the motion, which was relevant to the motions to exclude Progressive's experts. *Id.* On February 27, 2025, the Court held a hearing concerning the motions to exclude. *Id.* The Court partially granted Knight's motion to exclude Marc Spizzirri, while denying Progressive's motions to exclude Felix, Lacey, and Merritt. *Id.* As the case approached trial, Knight also successfully obtained a protective order preventing Progressive from taking a last-minute deposition pursuant to a subpoena of J.D. Power & Associates. *Id.*

While this litigation was ongoing, Class Counsel filed a second similar complaint against Progressive Direct, which also insures Arkansas citizens. *Id.* ¶ 9. Specifically, on October 4, 2024, Plaintiff Kim filed a class action complaint against Progressive Direct in the Circuit Court of Faulkner County, Arkansas. *Id.* The case is materially identical to this case except for being brought against a different Progressive entity, Progressive Direct. *Id.* Plaintiff Kim served a copy of the complaint on Progressive Direct on January 21, 2025, after which a notice of removal was timely filed. *Id.* Progressive Direct answered the *Kim* complaint on March 6, 2025. *Id.* After Judge Wilson recused himself, *Kim* was randomly reassigned to this Court. *Id.*

On March 20, 2025, the parties informed the Court that they had agreed to participate in a confidential settlement mediation. *Id.* ¶ 10. The partied agreed to mediate the claims of both Plaintiffs Knight and Kim. *Id.* To prepare for mediation, Class Counsel undertook an extensive

and thorough review of the voluminous data produced by Progressive concerning all Settlement Class Members and the data supporting calculation of the PSA Impact Amount. *Id.* Using its analysis of this data and other information gained in discovery, Class Counsel prepared a detailed mediation brief that set forth Plaintiffs' legal and factual positions. *Id.* This rigorous preparation ensured that Plaintiffs entered mediation with a fully developed, data-driven strategy aimed at achieving a fair and informed resolution for the Classes. *Id.*

Finally, on April 16, 2025, the parties participated in a full-day mediation with Steven R. Jaffe, an experienced mediator. *Id.* ¶ 11. The parties negotiated a term sheet that, in addition to agreeing to resolve the pending lawsuits against Progressive Northwestern and Progressive Direct, also agreed to resolve claims against three other underwriters insuring Arkansas citizens: Progressive Casualty, Progressive Specialty, and Progressive Class. *Id.*

Following the mediation, the parties finalized the Settlement Agreement that Plaintiffs now move unopposed for the Court to approve. *Id.* ¶ 12.

## III.    LEGAL STANDARD

The review of a proposed class action settlement has two stages. *See Stuart*, 2020 WL 13539024, at *1. The first stage—preliminary approval—involves the Court's determination of whether the proposed settlement is "'within the range of possible [judicial] approval,'" endorsement of the means of notice to class members, and scheduling the final fairness hearing. *Id.*

Pursuant to Federal Rule of Civil Procedure ("Rule") 23(e)(1)(B), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) includes the following factors:

    (A)    the class representatives and class counsel have adequately represented the class;

(B)    The proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Factors (A) and (B) are the procedural factors, while (C)(i)-(iv) are the substantive factors. As detailed below, the Settlement readily satisfies Rule 23(e)(2), as well as the Eighth Circuit's factors, [5] and warrants preliminary approval.

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The Eighth Circuit recognizes that "strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor." *Tile Shop Holdings*, 2017 WL 2574005, at *2 (second alteration in original). This policy "is particularly strong in the class action context." *Id.*

### A.    Whether Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Classes

The first "procedural" factor is whether the class representatives have adequately represented that class. Fed. R. Civ. P. 23(e)(2)(A). This analysis is separate from the Rule 23(a)(4)

---

[5] The Eighth Circuit's final approval factors largely overlap with those in Rule 23(e)(2): "'(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement.'" *Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, 2017 WL 2574005, at *2 (D. Minn. June 14, 2017) (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005)).

adequacy analysis and speaks more to "whether the class representatives possessed sufficient information and knowledge of the claims, issues, and defenses prior to negotiating and settling the claims." *Cook v. Gov't Emples. Ins. Co.*, No.: 6:17-cv-891-ORL-40KRS, 2020 U.S. Dist. LEXIS 111956, at *18 (M.D. Fla. Jun. 22, 2020). Plaintiffs Eric Knight and Jung Kim are Arkansas citizens insured by Progressive who were involved in a car wreck and had their vehicles deemed a total loss. *See* FAC ¶¶ 11–12. Plaintiffs qualify as members of the Class (because the ACV payments they received were decreased based upon Projected Sold Adjustments ("PSAs") to the comparable vehicles used to determine ACV) and they suffered the same injury for which they seek recovery on behalf of the Classes. *See* ECF No. 141 at 10–11. Plaintiffs Knight and Kim have actively participated in this matter. Bates Decl. ¶ 18. Each provided relevant information regarding his total loss claim and worked with counsel to prepare and review the complaints and other pleadings. *Id.* Additionally, Plaintiff Knight provided extensive deposition testimony, met with trial counsel to prepare to testify at trial, and was prepared and willing to do so. *Id.* Each Plaintiff communicated regularly with counsel throughout the case. *Id.*

More importantly, the class representatives clearly had an adequate information base and knowledge of the claims, defenses, and issues to intelligently analyze the potential settlement of this case. Plaintiffs and Class Counsel litigated this case to the very eve of trial, gathering all necessary discovery, briefing class certification, summary judgment, *Daubert* briefing, and interlocutory appeals. Bates Decl. ¶¶ 3–15. Class Counsel have zealously litigated this case across the country for years, gathering more knowledge, discovery, and information about the relevant practices and issues than any other group of plaintiffs' attorneys in the country, which includes numerous district court and appellate decisions, and all relevant data and discovery. *Id*. Clearly, they obtained an adequate basis by which to determine whether the proposed settlement is in the

best interests of Class Members and, in doing so, adequately represented the class in securing a settlement. *See, e.g.*, *Grant v. Ocwen Loan Servicing, LLC*, 2019 U.S. Dist. LEXIS 14673, at *14–15 (M.D. Fla. Jan. 29, 2019) ("Through … depositions, document production, and written discovery, Plaintiff and Class Counsel were able to" establish an adequate information base to satisfy the adequacy requirement); *Cook*, 2020 U.S. Dist. LEXIS 111956, at *19 ("Settlement occurred at an advanced stage of litigation, and only after numerous contested issues of class certification, discovery, and summary judgment were extensively briefed and litigated. Clearly, the Class Representatives evaluated voluminous discovery and data and conducted numerous depositions, such that they possessed sufficient information and knowledge with which to evaluate the merits and benefits of settlement[.]");

Accordingly, the adequacy of representation factor weighs heavily in favor of preliminary approval.

**B.    Whether the Settlement Was the Result of Good Faith, Arm's-Length Negotiations**

The second procedural factor is whether the settlement was the result of arms' length negotiations. Where a settlement is negotiated at arm's length between experienced and sophisticated counsel through a mediator, "'the recommendation of experienced counsel is entitled to great weight.'" *Yarrington v. Solvay Pharms., Inc.*, 2010 WL 11453553, at *7 (D. Minn. Mar. 16, 2010). Indeed, the utilization of "an experienced mediator" during settlement negotiations supports the reasonableness of a settlement. *In re CenturyLink Pracs. & Sec. Litig.*, 2020 WL 7133805, at *6 (D. Minn. Dec. 4, 2020).

As noted, the parties engaged in extensive arm's-length settlement negotiations with Steven R. Jaffe, including a full day in-person mediation session. Bates Decl. ¶ 10. In connection with that mediation session the parties filed mediation briefs, which contained significant details regarding

both the liability and potential damages at issue in this litigation. *Id.* These difficult and adversarial negotiations were held with each side having full knowledge of all issues in the case and the benefit of voluminous discovery. *Id.* ¶¶ 13–16. Defendants are represented by sophisticated counsel at King & Spalding, a prominent international law firm. "Based on the vigorous litigation of the issues, the exchange of informal discovery, and the rigorous negotiations described in Plaintiffs' submission, it appears to the Court that the Settlement was negotiated at arms' length and under circumstances demonstrating a lack of collusion." *Phillips v. Caliber Home Loans, Inc.*, 2021 WL 3030648, at *6 (D. Minn. July 19, 2021) (finding similar facts supported settlement approval).

### C.    Whether the Relief Provided to the Classes Is Adequate

"When making a preliminary fairness evaluation, the 'fair, reasonable, and adequate' standard imposed by Rule 23(e)(2) is lowered, and the Court's focus is on whether the settlement is 'within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies.'" *Stuart*, 2020 WL 13539024, at *1.

The Settlement is an excellent result for the Settlement Classes. The Settlement guarantees that every Settlement Class Member who submits a simple claim form will receive 100% of their PSA Impact Amount, with attorney's fees as approved by the Court, litigation costs, and costs of notice and administration paid separately so there is zero reduction in any Settlement Class Member's individual payment. Bates Decl. ¶¶ 19, 24. Based on a review of thousands of individuals claims, the parties have determined that (1) for the Progressive Northwestern Class, the average PSA Impact Amount is 4.02% of the ACV of each Settlement Class Members total loss vehicle, for a total of approximately $8,534,836, *id.* ¶ 20; and (2) for the Progressive Direct and Other Underwriter Class, the average PSA Impact Amount is 3.17% of the ACV of each Settlement Class Members total loss vehicle, for a total of approximately $4,676,937, *id.* ¶ 21. The parties estimate that the total amount of funds made available to the Settlement Classes is

approximately $13,211,773.[6] *Id.* ¶ 19. The average cash payment for members of the Progressive Northwestern Class is approximately $519, while the average cash payment for members of the Progressive Direct Class and the other Underwriter Class is approximately $484. *Id.* ¶¶ 20–21.

Courts in this circuit grant final approvals to settlements with a similar structure. *See Huyer v. Van de Voorde*, 314 F.R.D. 621, 627 (S.D. Iowa 2016) (finding "there are valid reasons" to approve a settlement requiring submission of a claim form), *aff'd*, 847 F.3d 983 (8th Cir. 2017).

Class Counsel achieved this result even though three federal district courts have entered orders denying class certification of materially similar claims also brought by Class Counsel.[7] Further, although Class Counsel have successfully obtained class certification against Progressive in similar PSA cases in eight states, three of those cases are currently pending interlocutory review in the Third, Fourth, and Seventh Circuits[8] (while one of the denials of class certification is on review in the Ninth Circuit[9]). Progressive would have undoubtedly sought to utilize any negative appellate order to decertify the class before this Court and in appeals.

Finally, Plaintiffs still would have had to prevail at trial to recover. Bates Decl. ¶ 26. Though Plaintiffs and Class Counsel believe in the strength of their claims, Progressive was ready to mount an aggressive defense with experienced advocates. *Id.* Practically speaking, Progressive has a bottomless war chest and the ability to take this case through trial, judgment, and subsequent appeals. *Id.* Considering the risks and uncertainties of continued litigation, and that Progressive

---

[6] The precise total cannot yet be calculated because the numbers are growing since the class periods for each Settlement Class continue to run through the date preliminary approval is entered.

[7] *See Ambrosio v. Progressive Preferred Ins. Co.*, No. CV-22-00342-PHX-SMB, 2024 WL 915184, at *7–8 (D. Ariz. Mar. 4, 2024); *Kroeger v. Progressive Universal Ins. Co.,* No. 4:22-CV-00104, 2023 WL 9059523, at *6 (S.D. Iowa Nov. 20, 2023); *Henson v. Progressive Premier Ins. Co. of Ill.*, No. 5:22-CV-00182-M, 2024 WL 3051264, at *12 (E.D.N.C. June 10, 2024).

[8] *See Drummond v. Progressive Specialty Ins. Co.*, No. 24-1267 (3d Cir. 2024); *Freeman v. Progressive Direct Ins. Co.*, No. 24-177 (4th Cir. 2024); *Schroeder v. Progressive Paloverde Ins. Co.*, 24-1559 (7th Cir. 2024).

[9] *Ambrosio v. Progressive Preferred Ins. Co.,* No. 24-1633 (9th Cir. 2024).

has the means to litigate this case for years, the proposed recovery is adequate.

As in *In re Zurn Pex Plumbing Products Liability Litigation*, the "settlement terms here are generous," offering Settlement Class Members an easy opportunity to obtain 100% of their damages from the PSA Impact; the "settlement provides up to [$13,211,773] to compensate class members. Additional expenses, such as attorneys' fees, administration costs, and notice costs, are all shouldered by [Progressive] and do not diminish class members' recovery. The settlement terms reflect the strength of Plaintiffs' claims and obviate the need for lengthy litigation;" and the "quality of settlement terms from class members' perspective, weighed against the capricious uncertainty, extensive time, and costs inherent in complex trial litigation, merits approval of this settlement." 2013 WL 716088, at *7 (D. Minn. Feb. 27, 2013).

###### D.    Whether the Settlement Treats Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The proposed Settlement is fair, reasonable, and adequate because it treats all Settlement Class Members equitably and does not treat Plaintiffs or any other Settlement Class Member preferentially. As set forth in the Settlement Agreement, any individual who submits a claim form will receive 100% of the PSA Impact Amount to their specific claim.[10] Agreement ¶ 8. The PSA Impact Amount is a set percentage that is applied in the same manner to the value of the totaled vehicle of each Settlement Class Member. *Id.* The reason for the difference in the percentages applied to the classes is that the actual PSA Impact Amount has diminished over time and the classes pertain to different periods. Bates Decl. ¶ 22. Importantly, the PSA Impact Amount is uniformly applied to each Settlement Class Member in an equal manner. *Id.* To ensure fair treatment,

---

[10] This average recovery is calculated by dividing the $13,211,773 in currently estimated available funds by the currently estimated total of 26,068 claims within the Settlement Classes. Bates Decl. ¶ 19.

individual recoveries will vary depending on the value of the totaled vehicle (claims for totaled vehicles with higher ACVs will receive proportionately larger recoveries). *Id.* Under these circumstances, the Court should find that the Settlement treats Class Members equitably relative to one another.

### E.    The Other Rule 23(e)(2)(C) Factors Are Met

Rule 23(e)(2)(C) also lists three additional factors that a court considers in approving a settlement: (1) the effectiveness of the proposed method for distributing relief; (2) the terms of the proposed attorneys' fees; and (3) the existence of any other "agreement[s]." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). These factors are readily met here.

#### 1.    The Proposed Method for Distributing Relief Is Effective

Under Rule 23(e)(2)(C)(ii), the method and effectiveness of the claims administration process is more than sufficient. The claims process includes a very short claim form which simply requests confirmation that the claimant's information is correct. *See* Bates Decl. ¶ 32 & Exs. A, B, C. Settlement Class Members will be able to select the form of payment they desire—e.g. paper check, PayPal, Venmo, ACH transfer, etc. *Id.* ¶ 36. So long as the claim form is in compliance with the Settlement Agreement, it will be approved by the Claims Administrator. *Id.* ¶ 43. A valid Claim Form and Electronic Claim Form will only require that the recipient confirm that he or she is the Policyholder or is otherwise entitled to a Claim Payment. *Id.* And there will be an opportunity to cure non-compliant claim forms. *Id.* If a timely submitted Claim Form or Electronic Claim Form is unsigned, illegible, or does not include the Claim Number or policy number involved in the claim, the Settlement Administrator will send the claimant a letter, after consultation with Progressive and Class Counsel, informing of the defect and providing the claimant with thirty (30) days to cure the defect. *Id.*

Once claims are approved, timely and valid payments will be paid via check within 60

days after the Effective Date, unless the claimant selects an electronic payment method. *Id.* ¶ 45. This is an effective method for distributing the settlement funds directly to Settlement Class Members.

### 2.    Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). The Court's "role at this preliminary stage is not to approve those amounts but rather to simply determine that the proposal is reasonable for purposes of providing Notice to Class Members and scheduling a final fairness hearing." *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2023 WL 1454371, at *11 (M.D. Pa. Feb. 1, 2023). Plaintiffs' Counsel will later request attorneys' fees not to exceed 30% of the $13,211,733 in settlement funds made available to the Classes and litigation expenses not to exceed $112,000. Progressive has agreed to pay attorney's fees and costs separately if approved the Court, making them an additional benefit to the Classes. Bates Decl. ¶ 24.

As will be described in significant detail at the final approval stage, over the past three years, Class Counsel have zealously litigated this case to the eve of trial, expending significant time and expense, all on an entirely contingent basis, while facing a very real risk of no recovery at all. *Id.* ¶¶ 3–28.

This fee request is supported by ample precedent from this Circuit. A proposed attorneys' fee of 30% is reasonable considering the work performed and the outstanding results obtained. It is well within the range of percentage fees that are regularly awarded in complex class actions and other class actions in this Circuit. The following quote and series of citations from this Court when approving a 33-1/3% contingency fee supports a 30% request here:

> The amount of attorneys' fees awarded [33-1/3%] and expenses reimbursed from the Settlement Proceeds are consistent with the awards in similar cases. *See Koenig v. U.S. Bank N.A. (In re U.S. Bancorp Litig.)*, 291 F.3d 1035, 1038 (8th Cir. 2002)

> (approving award to class counsel of 36 percent of settlement fund); *Carlson v. C.H. Robinson Worldwide, Inc.*, 2006 WL 2671105 (D. Minn. Sept. 18, 2006) (35.5% fee award); *EEOC v. Faribault Foods, Inc.*, 2008 U.S. Dist. LEXIS 29132, at *13-14 (D. Minn. Mar. 28, 2008) (36% in fees and expenses); *In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005) (surveying eleven cases in the courts in the Eighth Circuit including one fee award of 36%, seven of 33.3%, two of 30%, and one of 25%).

*Nelson v. Wal-Mart Stores, Inc*., 2009 WL 2486888, at *2 (E.D. Ark. Aug. 12, 2009); *see also, e.g., Huyer*, 314 F.R.D. at 629 (finding "an award of 33 1/3 of the settlement fund to be in line with other awards in the Eight Circuit; it is also reasonable and fair given the circumstances of this case").

### 3.   The Parties Have No Other Agreements Besides the Settlement.

The parties have entered no agreements outside the Settlement Agreement. Bates Decl. ¶ 12.

## V.   THE PROPOSED SETTLEMENT CLASSES SATISFY RULE 23 AND SHOULD BE APPROVED

In determining whether to grant preliminary approval, the Court should also determine whether it "will likely be able to" certify the proposed Settlement Class for purposes of the Settlement at final approval.  Fed. R. Civ. P. 23(e)(1)(B).

Courts within the Eighth Circuit have long acknowledged the propriety of certifying settlement classes.  *See, e.g.*, *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1175 (8th Cir. 1995) (upholding preliminary certification of class for settlement purposes); *Stuart*, 2020 WL 13539024, at *2 (conditionally certifying settlement class). Further, "[t]he requirements for class certification are more readily satisfied in the settlement context than when a class has been proposed for the actual conduct of the litigation." *White v. Nat'l Football League*, 822 F. Supp. 1389, 1402 (D. Minn. 1993) (citing cases).

Here, the Court already determined certification was appropriate based on the extensive

record and briefing presented by the parties. The Settlement Classes involve similar class definitions as set forth in that motion,[11] but with additional Classes, subject to their own statutes of limitations based on filing dates, for the four additional Progressive entities included in the Agreement. Plaintiffs estimate there are a total of over 26,000 members of the three Settlement Classes. Bates Decl. ¶ 19. Plaintiffs contend that, based on this Court's prior order, all the requirements of Rule 23(a) and 23(b)(3) are met. In sum, pursuant to Rule 23(a): (i) the Settlement Classes are so numerous that joinder of all members would be impracticable (ECF No. 141 at 3–4); (ii) there are questions of law or fact common to the Settlement Classes (*id*. at 4–9); (iii) the claims or defenses of Plaintiffs are typical of the claims or defenses of the Settlement Classes (*id*. at 9–10); and (iv) Plaintiffs and Class Counsel have—and will continue to—fairly and adequately protect the interests of the Settlement Class (*id*. at 11). Furthermore, as the Court previously determined, common questions predominate concerning Plaintiffs' claims (*id.* at 4–9) and a class action is superior to other methods for fairly and efficiently adjudicating this controversy (*id.* at 11).

Plaintiffs contend this reasoning applies with equal force to the four additional Progressive entities included in the Settlement because all Settlement Class Members were subject to insurance policies with contractual language materially identical to Plaintiff Knight's policy, were all promised an ACV payment for their total loss vehicle, and all had that payment reduced through Progressive's uniform application of the PSA. Bates Decl. ¶ 48. Since "the standard for preliminary certification of settlement classes" is "more relaxed" than that for final approval, there Court may certainly apply its prior analysis to preliminary certify the Classes. *Schoenbaum v. E.I. Dupont De Nemours & Co*., No. 4:05CV01108ERW, 2009 WL 4782082, at *5 (E.D. Mo. Dec. 8, 2009)

---

[11] The only difference in the class definition for insureds of Progressive Northwestern is that the class period has been extended to include all claims up through the date of entry of Preliminary Approval.

Plaintiffs therefore respectfully request that the Court preliminarily certify the Settlement Classes for purposes of implementing the proposed Settlement.

## VI.    THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS AND SHOULD BE APPROVED

Under Rule 23, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). This requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Here, the parties have negotiated the procedures for disseminating to all members of the Settlement Classes. *See* Bates Decl. Exs. A–G. The proposed Notices apprise Settlement Class Members of (among other disclosures) the nature of the Action, the average amount of money each Settlement Class Members will recover, the claim at issue in the Action, their right to object to the Settlement or be excluded from it, that their claims will be released if they do nothing, and where they can go to obtain more information about the Settlement. Bates Decl. ¶ 37. The Notices also: (i) advise that a Settlement Class Member may enter an appearance through counsel; (ii) describes the binding effect of a judgment on Settlement Class Members; (iii) states the procedures and deadline for Settlement Class Members to object to the proposed Settlement and the requested attorneys' fees and expenses; and (iv) states the procedures and deadline for submitting a Claim Form to recover from the Settlement and for requesting exclusion. *Id.* Additionally, the Notices and Claim Form and other relevant documents will be posted on a dedicated Settlement website. *Id.* ¶ 38.

The proposed Notice Program is robust. Each Class Member will receive a minimum of two Mail Notices and two E-mail Notices, utilizing the mailing addresses and email addresses in Progressive's clam records. By providing multiple mailed and emailed notices, the Notice Program

18

will make sure that every Settlement Class Member has a full and fair opportunity to evaluate the Settlement and submit a claim. Each notice will include the average amount each Settlement Class Member will recover. And participation could not be easier. The postcard notices will include a detachable, pre-filled claim form (postage prepaid) requiring only confirmation that the information is correct. The email notices will include a link to a pre-filled electronic version of the same simple claim form. Notably, Progressive has agreed to separately pay the costs of sending the first two Mail Notices and E-mail Notices and claims administration, making this another benefit to the Settlement Classes. *Id.* ¶ 40.

Additionally, Class Counsel will send one more Mail Notice and one more E-Mail Notice to Settlement Class Members who have not yet made claims, reminding them to make a claim. The costs associated with sending the third Mail Notice and E-mail Notice will be paid for by Class Counsel. Three postcard notices, three email notices, a longform notice, and a simplified and streamlined claim process is an unusually excellent process and is evidence of the fairness and reasonableness of the proposed Settlement. *See, e.g.*, *Braynen v. Nationstar Mortg., LLC*, 2015 WL 6872519, at *18 (S.D. Fla. Nov. 9, 2015) (robust notice plan is evidence that the terms of settlement are fair and reasonable).

Plaintiff also requests that the Court appoint Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Claims Administrator to disseminate all notices approved by the Court to Settlement Class Members, process Claim Forms and administer the Settlement. Bates Decl. ¶ 30. Epiq is a recognized leader in legal administration services for class action settlements and legal noticing programs and has implemented successful claims administration programs in many class actions. *Id.*

Thus, the form and manner of providing notice to the Settlement Class satisfy the

requirements of due process and Rule 23. *See In re: E.W. Blanch Holdings, Inc. Sec. Litig.*, 2003 WL 23335319, at *1 (D. Minn. June 16, 2003) (approving similar notice program). The Notice here is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Campbell v. Transgenomic, Inc.*, 2019 WL 3003920, at *2 (D. Neb. July 10, 2019).

## VII.    PROPOSED SCHEDULE OF EVENTS

Class Counsel respectfully proposes the following schedule for the Court's consideration, which is also set forth in the Preliminary Approval Order:

| | |
|---|---|
| Deadline for Progressive to provide updated Class Data to Class Counsel and the Settlement Administrator | No later than 15 calendar days after entry of the Preliminary Approval Order |
| Deadline for commencing emailing and mailing of the Notice to Settlement Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") | No later than 45 calendar days after entry of the Preliminary Approval Order |
| Deadline for Plaintiffs to file papers in support of final approval and application for attorneys' fees and expenses | 30 calendar days after the Notice Date (75 calendar days after entry of the Preliminary Approval Order) |
| Deadline for receipt of exclusion requests or objections | 45 calendar days after the Notice Date (90 calendar days after entry of the Preliminary Approval Order) |
| Deadline for any response to any timely and valid objections and any supplemental brief re: final approval | 60 days after the Notice Date (105 calendar days after entry of the Preliminary Approval Order) |
| Final Approval Hearing | At least 112 calendar days after entry of the Preliminary Approval Order |
| Deadline for submitting Claim Forms | Postmarked or electronically filed no later than 30 calendar days after the Final Approval Hearing |

## VIII.   CONCLUSION

Plaintiffs and Class Counsel obtained an outstanding Settlement on behalf of the Settlement Classes.  For these reasons, Plaintiffs respectfully requests that the Court grant preliminary approval of the Settlement and enter the accompanying Preliminary Approval Order.

Dated: May 8, 2025                          Respectfully submitted,

Hank Bates (ABN 980563)
Tiffany Wyatt Oldham (ABN 2001287)
Lee Lowther (ABN 2013142)
CARNEY BATES & PULLIAM, PLLC
One Allied Drive, Suite 1400
Little Rock, AR 72202
Tel: (501) 312-8500
Email: hbates@cbplaw.com
Email: toldham@cbplaw.com
Email: llowther@cbplaw.com

Andrew J. Shamis (admitted *pro hac vice*)
Edwin E. Elliott (admitted *pro hac vice*)
Christopher Berman (admitted *pro hac vice*)
SHAMIS & GENTILE, P.A.
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
Email: ashamis@shamisgentile.com
Email: edwine@shamisgentile.com
Email: cbergman@shamisgentile.com

Joshua R. Jacobson (admitted *pro hac vice*)
JACOBSON PHILLIPS PLLC
478 E. Altamonte Dr., Ste. 108-570
Altamonte Springs, FL32701
Tel: (407) 720-4057
Email: jacob@jacobsonphillips.com

Brian A. Glasser (admitted *pro hac vice*)
James L. Kauffman (ABN 2003050)
BAILEY & GLASSER, LLP
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
Tel: (202) 463-2101
Email: bglasser@baileyglasser.com
Email: jkauffman@baileyglasser.com

Patricia M. Kipnis (admitted *pro hac vice*)
BAILEY & GLASSER LLP
923 Haddonfield Rd. Suite 307
Cherry Hill, NJ 08002
Tel: (304) 340-2282
Email: pkipnis@baileyglasser.com

Jonathan Marshall (admitted *pro hac vice*)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Tel: (304) 345-6555
Email: jmarshall@baileyglasser.com

David L. Selby, II (admitted *pro hac vice*)
BAILEY & GLASSER LLP
3000 Riverchase Galleria, Suite 905
Birmingham, AL 35244
Telephone: (205) 835-9906
Email: DSelby@baileyglasser.com

Adam Schwartzbaum (admitted *pro hac vice*)
EDELSBERG LAW, P.A.
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
Tel: (786) 289-9469
Email: adam@edelsberglaw.com

Edmund A. Normand (admitted *pro hac vice*)
Christopher M. Hudon (admitted *pro hac vice*)
NORMAND PLLC
3165 McCrory Place, Suite 175
Orlando, FL 32803
Tel: (407) 603-6031
Email: ed@normandpllc.com
Email: christopher.hudon@normandpllc.com

*Counsel for Plaintiff and the Proposed Class*