UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

| | |
|---|---|
| ERIK KNIGHT, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PROGRESSIVE NORTHWESTERN INSURANCE COMPANY,<br><br>Defendant. | Case No. 3:22-cv-00203-JM |

**DECLARATION OF HANK BATES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

I, Hank Bates, declare and state as follows:

1. I am a partner at Carney Bates & Pulliam, PLLC. My firm, along with Jacobson Phillips PLLC, Normand PLLC, Edelsberg Law, P.A., Shamis & Gentile P.A., and Bailey & Glasser, LLP (collectively "Class Counsel") serve as co-counsel of record for Plaintiffs Eric Knight and Jung Kim (Plaintiffs) against Progressive Northwestern Insurance Company ("Progressive Northwestern"), Progressive Direct Insurance Company ("Progressive Direct"), Progressive Casualty Insurance Company ("Progressive Casualty"), Progressive Specialty Insurance Company ("Progressive Specialty"), and Progressive Classic Insurance Company ("Progressive Classic") (together, "Progressive") (collectively "Progressive" or "Defendants") in the above-captioned consolidated cases (the "Action").

2. I make this Declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. I have personal knowledge of the facts set forth in this

1

Declaration based on active participation in all aspects of the prosecution and resolution of the Action. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

## II.   Summary of the Action

3.   Plaintiff Knight filed his class action complaint on August 4, 2022. *See* ECF No. 1. After Progressive Northwestern responded with an answer, ECF No. 3, the parties engaged in discovery and, on January 25, 2024, Plaintiff moved for class certification. *See* ECF No. 41. The Motion for Class Certification was supported with voluminous evidence, including four expert reports. *See* ECF Nos. 41-1–41-21. Progressive opposed the motion, ECF No. 46, supported by reports of its own experts, among other evidence. *See* ECF Nos. 46-1–46-28. Knight filed a reply in support of the Motion for Class Certification on April 25, 2024. *See* ECF No. 51.

4.   After the Motion for Class Certification was fully briefed, the Court held a hearing on class certification on May 30, 2024. *See* ECF No. 64. On July 1, 2024, the Court informed the parties via email that the Court "is going to grant Plaintiff's motion to certify the class" and requested a Notice Program. *See* ECF No. 74. Thus, on July 19, 2024, Plaintiffs submitted a Motion for Court to Approve Notice Program for Certified Class and Incorporated Brief, which was disputed. *See* ECF Nos. 74, 77, 102.

5.   The parties continued vigorously litigating this action, including briefing several substantive motions. Knight moved to exclude the expert testimony of Progressive's experts Jonathan Walker and Marc Spizzirri, while Progressive moved to exclude the expert testimony of Knight's experts Kirk Felix, Jeffrey Martin, Dr. Michelle Lacey, and Jason Merritt. *See* ECF Nos. 78, 80, 81, 83, 84. These motions were fully briefed. *See* ECF Nos. 108, 109, 110, 112, 113, 114, 126, 127, 128, 129, 130, 132. Progressive also moved for summary judgment, ECF Nos. 86–87,

which Plaintiff Knight opposed, ECF Nos. 115–116; *see also* Progressive's Reply, ECF Nos. 133–134.

6. On December 19, 2024, this Court entered an order granting Plaintiff's Motion for Class Certification. *See* ECF No. 141. The Court found that the proposed class of Progressive Northwestern insureds meets every requirement of Federal Rule of Civil Procedure of 23(a) and 23(b)(3), including that Plaintiff Knight is an adequate and typical Class member and that common issues predominate concerning the contractual claim. *Id.* Knight filed a Notice Program shortly after the Court granted the motion, ECF No. 145, which the Court entered with minor modifications, ECF No. 153.

7. Progressive filed a Rule 23(f) petition with the Eighth Circuit Court of Appeals seeking interlocutory review of the order granting class certification. *See* ECF No. 155. After the petition was fully briefed, the Eighth Circuit denied the petition. *See* ECF No. 158 (8th Cir. Judgment); ECF No. 159 (Mandate of 8th Cir. in accordance with judgment of March 27, 2025).

8. After the Court granted class certification, Plaintiff Knight moved in limine to exclude any evidence of NADA and KBB guidebook values. *See* ECF No. 144. Progressive opposed the motion, ECF No. 151, which was relevant to the motions to exclude Progressive's experts. On February 27, 2025, the Court held a hearing concerning the motions to exclude. *See* ECF No. 154. The Court partially granted Knight's motion to exclude Marc Spizzirri, while denying Progressive's motions to exclude Felix, Lacey, and Merritt. *Id.* As the case approached trial, Knight also successfully obtained a protective order preventing Progressive from taking a last-minute deposition pursuant to a subpoena of J.D. Power & Associates. *See* ECF Nos. 156, 160, 163, 164.

9. While this litigation was ongoing, Class Counsel filed a second similar complaint

against Progressive Direct, which also insures Arkansas citizens. Specifically, on October 4, 2024, Plaintiff Kim filed a class action complaint against Progressive Direct in the Circuit Court of Faulkner County, Arkansas. *See Kim v. Progressive Direct Ins. Co.*, No. 4:25-cv-00145-JM, ECF No. 1 (Feb. 20, 2025) (notice of removal). The case is materially identical to this case except for being brought against a different Progressive entity, Progressive Direct. *See Kim* ECF No. 2 (*Kim* Complaint). Plaintiff Kim served a copy of the complaint on Progressive Direct on January 21, 2025, after which a notice of removal was timely filed. *See Kim* ECF No. 1. Progressive Direct answered the *Kim* complaint on March 6, 2025. *See Kim* ECF No. 7. After Judge Wilson recused himself, *Kim* was randomly reassigned to this Court. *See Kim* ECF No. 16.

10. On March 20, 2025, the parties informed the Court that they had agreed to participate in a confidential settlement mediation. *See* ECF No. 166. The parties agreed to mediate the claims of both Plaintiffs Knight and Kim. To prepare for mediation, Class Counsel undertook an extensive and thorough review of the voluminous data produced by Progressive concerning all Settlement Class Members and the data supporting calculation of the PSA Impact Amount. Using its analysis of this data and other information gained in discovery, Class Counsel prepared a detailed mediation brief that set forth Plaintiffs' legal and factual positions. This rigorous preparation ensured that Plaintiffs entered mediation with a fully developed, data-driven strategy aimed at achieving a fair and informed resolution for the Classes.

11. Finally, on April 16, 2025, the parties participated in a full-day mediation with Steven R. Jaffe, an experienced mediator. The parties negotiated a term sheet that, in addition to agreeing to resolve the pending lawsuits against Progressive Northwestern and Progressive Direct, also agreed to resolve claims against three other underwriters insuring Arkansas citizens: Progressive Casualty, Progressive Specialty, and Progressive Class.

12. Following the mediation, the parties finalized the Settlement Agreement that Plaintiffs now move unopposed for the Court to approve. The Settlement Agreement is attached hereto as Exhibit 1. The parties have entered no agreements outside the Settlement Agreement.

### III.    Plaintiffs' and Class Counsel's Role in Prosecuting and Settling the Action

13. Plaintiffs and Class Counsel have zealously and skillfully represented the interests of the proposed Settlement Classes and committed substantial resources to the resolution of the Settlement Classes' claims.

14. Plaintiffs and Class Counsel performed significant work in identifying and litigating the claims of Plaintiffs and the Settlement Class Members prior to entering the Settlement, including engaging in extensive factual investigation; drafting the initial and amended complaints; completing both fact and expert discovery and reviewing voluminous discovery materials; engaging in substantial motions practice (including Defendants' motion to dismiss, Plaintiffs' motion for class certification, Progressive's petition for interlocutory review of the class certification order, motions for summary judgment, *Daubert* briefs, and motions in limine); conducting pre-trial preparations and engaging in pre-trial proceedings; and participating in a full-day mediation. Indeed, this case was not successfully settled until the very eve of trial.

15. Thus, by the time the Settlement was reached, Plaintiffs and Class Counsel were well informed about the strengths and weaknesses of their claims and Defendants' defenses. This is especially true given that Class Counsel are simultaneously litigating virtually identical cases in approximately 20 other states, including two others that were also settled on the eve of trial in the Southern District of New York (*Volino, et. al. v. Progressive Casualty Ins. Co., et al.*, (S.D.N.Y.), No. 1:21-cv-06243-LGS (hereinafter, "*Volino*")), and in the Northern District of Georgia (*Brown et al. v. Progressive v. Progressive Mountain Ins. Co. et. al.*, No. 3:21-cv-00175-TCB (hereinafter, "*Brown*")). Suffice it to say, Class Counsel have a meticulous and comprehensive understanding

of the issues in this case, the strengths and weaknesses of the claims and defenses, and the pros and cons of potential settlement terms.

16.   In sum, the Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determined the contours of the proposed Settlement Classes, and reached a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length and with the assistance of neutral mediators.

17.   Further, Plaintiffs and Class Counsel have vigorously represented the Settlement Classes in this Action and will continue to do so after preliminary and final approval of the Settlement (if approved).

18.   Plaintiffs Knight and Kim have actively participated in this matter. Each provided relevant information regarding his or her total loss claim and worked with counsel to prepare and review the complaints and other pleadings. Additionally, Plaintiff Knight provided extensive deposition testimony, met with trial counsel to prepare to testify at trial, and was prepared and willing to do so. Each Plaintiff communicated regularly with counsel throughout the case.

**IV.   Recommendation of Class Counsel**

19.   The total amount of funds made available to the Class ($13,211,773) represents approximately 100% of the compensatory damages alleged by Plaintiffs under the damages model they were prepared to present at trial. Compensatory damages are calculated as the difference between what each Class Member received in ACV benefits and what they would have received if the PSA deduction had not been applied—the "PSA Impact Amount." The average cash payment is approximately $506, which is calculated by dividing the $13,211,773 in currently estimated available funds by the currently estimated total of 26,068 claims within the Settlement Classes.

20.   For the Progressive Northwestern Class, the PSA Impact Amount is 4.02% of the

Actual Cash Value of each Settlement Class Members total loss vehicle. That Actual Cash Value Amount is reflected in Progressive's data under the column "Valuation_ACVAmt." The Total PSA Impact Amount that is available to be claimed by the Progressive Northwestern Class is estimated to be $8,534,836. The average cash payment for members of the Progressive Northwestern Class is approximately $519.

21.     For the Progressive Direct Class and other Underwriter Class, the PSA Impact Amount is 3.17% of the Actual Cash Value of each Settlement Class Members total loss vehicle. That Actual Cash Value Amount is reflected in Progressive's data under the column "Valuation_ACVAmt." The Total PSA Impact Amount that is available to be claimed by the Progressive Northwestern Class is estimated to be $4,676,937. The average cash payment for members of these two classes is approximately $484.

22.     The reason for the difference between the PSA Impact Amounts between the Settlement Classes is due to their differing time periods. The PSA Impact Amount is uniformly applied to each Settlement Class Member in an equal manner. To ensure fair treatment, individual recoveries will vary depending on the value of the totaled vehicle (claims for totaled vehicles with higher ACVs will receive proportionately larger recoveries).

23.     Progressive will pay 100% of the PSA Impact Amount to Settlement Class Members who submit a claim.

24.     As an additional benefit to the Classes, Progressive has agreed to pay attorney's fees, litigation costs, and costs of notice and administration separately, so there is zero reduction in any Class Member's individual payment.

25.     Based on our thorough examination and investigation of the facts and law relating to Plaintiffs' claims on behalf of the Settlement Classes and given the costs, risks, and delay of

further litigation, Class Counsel believe the proposed Settlement is an excellent result and in the best interest of the Settlement Classes. Our extensive investigation and four years of hard-fought litigation—here and in jurisdictions throughout the country—informed us about the strengths and weaknesses of Plaintiffs' claims, and allowed us to conduct an informed, fair, and objective evaluation of the value and risks of continued litigation.

26.   Class Counsel recognize that despite our belief in the strength of Plaintiffs' claims, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain. Plaintiffs still would have had to prevail at trial to recover. Though Plaintiffs and Class Counsel strongly believe in the strength of their claims, Progressive was ready to mount an aggressive defense with experienced advocates. Practically speaking, Progressive has a significant war chest and the ability to take this case through trial, judgment, and subsequent appeals.

27.   Class Counsel is also mindful that absent the proposed Settlement, Progressive would continue to challenge liability, would prepare a competent defense at trial, and would likely file a motion to decertify the Litigation Classes or appeal any judgment favorable to Plaintiffs, as well as appeal the Order granting class certification. There is a significant risk that the Eighth Circuit would ultimately reverse this Court's ruling on class certification or any favorable summary judgment or verdict in Plaintiffs' and the Classes' favor.

28.   Based on the foregoing, it is Class Counsel's professional opinion that the relief provided by the proposed Settlement is fair, adequate, reasonable, and in the best interests of the Settlement Classes, and we respectfully recommend it to the Court for its preliminary (and, ultimately, final) approval.

29.   Class Counsel have conferred with Plaintiffs who also support the proposed Settlement.

**V.    Selection of Settlement Administrator and the Proposed Notice Program**

30.    The Parties have agreed, subject to Court approval, that Epiq Class Action and Claims Solutions, Inc. ("Epiq") will serve as Settlement Administrator. Settlement Agreement at ¶ 1.w. Epiq has ample experience in class action administration and was previously appointed by this Court as administrator of the court-approved notice program implemented in accord with this Court's Class Certification Order. *See* ECF No. 153. Moreover, Epiq was the Settlement Administrator for the settlements in *Volino* and *Brown* which are similar to this settlement, including a similar notice plan. While the notice plan here differs because Class Members will be required to submit a Claim Form, Epiq has deep experience administering these types of settlement procedures. Accordingly, Epiq is intimately familiar with the data and data systems, as well as the settlement procedures, that are relevant to this Action.

31.    In its role as Settlement Administrator, Epiq shall be responsible for effectuating the Notice Program, described more fully in the contemporaneously filed Declaration of Cameron Azari.

32.    Pursuant to the Notice Program, the Settlement Administrator shall mail a minimum of two Mail Notices (attached hereto as Exhibit 2), served by first-class US mail to the last known address of each Settlement Class Member, including skip trace remailing for any undelivered mail; and a minimum of two Email Notices (attached hereto as Exhibit 3) to those Settlement Class Members for whom an email address is available in Defendants' records. Settlement Class Members for whom Progressive maintains physical addresses and email addresses shall be sent both the Mail Notices and Email Notices.

33.    Prior to sending Mail Notices to any Settlement Class Members, the Settlement Administrator shall attempt to update the last known addresses of the Settlement Class Members

through the National Change of Address system or similar databases. Further, a skip trace shall be conducted for all returned postcards and reissued to any new current address located. The Mail Notices will include a detachable, pre-filled Claim Form with prepaid postage requiring only attestation that the information is correct (or correcting the information if not) and signing the form.

34. Prior to sending Email Notice to any Settlement Class Members, a skip trace for current email addresses shall be performed for the most current email address which notice will be sent to that email address and the email address of record. The Email Notice shall include a link to a pre-filled electronic Claim Form. The Claim Form will require only that the claimant confirm he or she is the policyholder or otherwise entitled to payment.

35. Each notice will include the average amount each Settlement Class Member will recover. Settlement Class Members will be provided an opportunity to select their form of payment (physical check or electronic payment such as PayPal, Venmo, ACH transfer, etc.).

36. The Notices apprise Settlement Class Members of (among other disclosures) the nature of the Action, the definition of the Settlement Classes, the claims and issues in the Action, and the claims that will be released. The Notices also: (i) advise that a Settlement Class Member may enter an appearance through counsel; (ii) describes the binding effect of a judgment on Settlement Class Members; (iii) states the procedures and deadline for Settlement Class Members to object to the proposed Settlement and the requested attorneys' fees and expenses; (iv) states the procedures and deadline for submitting a Claim Form to recover from the Settlement and for requesting exclusion; and (v) provides the date, time, and location of the Settlement Hearing. At Class Counsel's option, they are permitted to send one additional Email Notice and one additional Mail Notice. Progressive shall not be responsible for the cost of the third Email Notice and/or Mail

Notice, and any such costs will be the sole responsibility of Class Counsel.

37. Both the Email Notice and the Mail Notice will include a link to the Settlement Website, www.ARKTotalLossClaim.com. This is the website that will be created to house information about the certified classes, and it will be updated to include the following information: (1) a more detailed summary of the Settlement terms (the "Long Form Notice") (attached hereto as Exhibit 4); (2) a "Contact Us" page with the Settlement Administrator's contact information; (3) the Settlement Agreement, motions for approval and for attorneys' fees (once filed), and all other important documents in the case; (4) important case dates and deadlines, including the deadlines to opt out and object; (5) a summary of Settlement Class Members' options; and (6) the date, time, and location of the Final Fairness Hearing. Members of the Settlement Class may alternatively submit claim forms online electronically with a "Submit a Claim" button at the Settlement Website (www.ARKTotalLossClaim.com) by providing one of the following in addition to their name and address: 1) the unique claim number found on the Notices; or 2) the claim number associated with the Total Loss. The Claim Form, attached hereto as Exhibit 5, will be available to download from the Settlement Website.

38. The Notice Program will also establish a toll-free telephone line with an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the litigation that is accessible 24 hours a day, 7 days a week.

39. Settlement administrative costs are estimated not to exceed $101,745, which will be paid separately by Defendant and not decrease payments to Settlement Class Members. Epiq's estimate is attached as Exhibit 6 to this Declaration.

40. Additionally, Class Counsel will send one more Mail Notice and one more E-Mail

Notice to Settlement Class Members who have not yet made claims, reminding them to make a claim. The costs associated with sending the third Mail Notice and E-mail Notice will be paid for by Class Counsel.

### VI. The Plan of Allocation

41. Class Counsel proposes that every Settlement Class Member who submits a valid and timely Claim Form will receive 100% of their PSA Impact Amount, tailored to the ACV of their totaled vehicle, with zero reductions for attorney's fees, litigation costs, or costs of notice and administration. For example, for a member of the Progressive Northwestern Class, the PSA Impact Amount is 4.02% of the Actual Cash Value of each Settlement Class Member's total loss vehicle. That Actual Cash Value Amount is reflected in Progressive's data under the column "Valuation_ACVAmt." If a class member's ACV was determined to be $10,000 then they would receive a cash payment of $402.

42. The deadline for submitting claims will be 30 days after the Final Approval Hearing.

43. The Claim Administrator may deny claims not in compliance with the Settlement Agreement including the filing of duplicative Claim Forms or failure to fully complete the Claim Form. However, a valid Claim Form and Electronic Claim Form will only require that the recipient confirm that he or she is the Policyholder or is otherwise entitled to a Claim Payment. And there will be an opportunity to cure non-compliant claim forms. If a timely submitted Claim Form or Electronic Claim Form is unsigned, illegible, or does not include the Claim Number or policy number involved in the claim, the Settlement Administrator will send the claimant a letter, after consultation with Progressive and Class Counsel, informing of the defect and providing the claimant with thirty (30) days to cure the defect.

44. Class Counsel proposes that Settlement Class Members' distributions be made under the following procedure, which tracks the damages model set forth in prior pleadings and that Class Counsel was prepared to present at trial. Under this procedure, each Settlement Class Member will be treated equitably, as each will receive what the parties estimate in good faith to be their potential damages claim in this Action.

### VII. Distribution of Payments to Members of the Settlement Classes

45. Unless the Class Member requests payment via an electronic payment method, timely and valid claims will be paid via check within 60 days after the Effective Date.

46. Checks shall be valid for 180 days. If, within 30 days of the void date, the claimant requests that another check be issued, it shall be reissued. After that date, all uncashed checks will be void.

### VIII. Roles and Qualifications of Class Counsel and the Settlement Class Representatives and Requests for Attorneys' Fees, Litigation Expenses, and Service Awards

47. As noted above, in its Class Certification Order and subsequent orders, this Court previously appointed Plaintiff Knight and Class Counsel to, respectively, represent the Progressive Northwestern Class as class representatives and Class Counsel.

48. The Court's reasoning applies with equal force to the four additional Progressive entities included in the Settlement because all Settlement Class Members were subject to insurance policies with contractual language materially like Plaintiff Knight's policy, were all promised an ACV payment for their total loss vehicle, and all had that payment reduced through Progressive's uniform application of the PSA.

49. For the same reasons previously espoused by this Court in its prior order, this Court should (i) appoint Plaintiffs Knight and Kim as class representatives, and (ii) appoint Carney Bates & Pulliam, Jacobson Phillips, Normand, Edelsberg Law, and Shamis & Gentile as Class Counsel.

50. The Settlement Agreement provides that, consistent with the common fund doctrine, Class Counsel may file a motion with the Court requesting an award of attorneys' fees and out-of-pocket litigation expenses to compensate them for all the work already performed in this case, all the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case. Class Counsel's requests for attorneys' fees will not exceed 30% of the total amount of funds made available to the Classes ($3,963531.90), and their request for litigation expenses will not exceed $112,000. The enforceability of the Settlement is not contingent on the Court's approval of Class Counsel's application for an award of attorneys' fees or litigation expenses. The maximum amount Plaintiffs and Class Counsel will request will be communicated in the various Notices provided to Class Members, and the fee petition, once filed, will be posted to the Settlement Website in advance of the deadline to object.

51. The Settlement Agreement further provides that Plaintiffs may request a service award for each Settlement Class Representative. Plaintiffs request a service award of no more than $10,000 for Plaintiff Knight and $5,000 for Plaintiff Kim, subject to approval by Court. These service awards, which will be paid separately by Progressive, will compensate Plaintiffs for their time and effort serving as the Settlement Class Representatives through almost three years of litigation and up to the eve of trial. The enforceability of the Settlement is not contingent on this Court's approval of Plaintiffs' requests for service awards.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 8th day of May 2025, in Little Rock, Arkansas.

                         */s/ Hank Bates*
                         Hank Bates