## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

| | |
|---|---|
| ERIK KNIGHT and JUNG KIM, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>          v.<br><br>PROGRESSIVE NORTHWESTERN INSURANCE COMPANY, PROGRESSIVE DIRECT INSURANCE COMPANY, PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE SPECIALTY INSURANCE, and PROGRESSIVE CLASSIC INSURANCE COMPANY, Ohio corporations,<br><br>          Defendants. | Case No.: 3:22-cv-00203-JM |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION. ................................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND................................................. 3

  A.   OVERVIEW OF PLAINTIFFS' CLAIMS ...................................................... 3

  B.   PROCEDURAL POSTURE .............................................................................. 3

     1.    The Knight Action ............................................................................... 3

     2.    The Kim Action .................................................................................... 5

     3.    Settlement Negotiations ....................................................................... 5

III.   THE SETTLEMENT. ............................................................................................ 7

  A.   THE SETTLEMENT BENEFITS .................................................................. 7

  B.   NOTICE TO THE SETTLEMENT CLASSES ............................................... 9

  C.   CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS ....................................................... 10

IV.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT. ....................................... 11

  A.   CRITERIA TO BE CONSIDERED IN ASSESSING WHETHER A CLASS ACTION SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE. ................... 11

  B.   THE SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL............ 12

     i.    The Merits of Plaintiffs' Case Balanced Against the Terms of the Settlement, and the Costs, Risks, and Delays of Continued Litigation Through Trial and Appeal. ............................................................................................ 17

     ii.   Effectiveness of Any Proposed Method of Distributing Relief to the Class. ....... 21

     iii.  The Requested Attorneys' Fees and Litigation Expenses Are Reasonable, Reflective of the Quality of Counsel's Skills and Work, and In Line with Similar Awards Approved in the Eighth Circuit................................................ 22

     iv.  There Is No Agreement Required to Be Identified under Rule 23(e)(3). ............ 22

     v.   Defendants' Financial Condition. ............................................................. 22

     vi.  The Lack of Opposition to the Settlement. ............................................... 23

V.    THE PLAN OF ALLOCATION IS ADEQUATE, FAIR AND REASONABLE AND SHOULD BE APPROVED. ............................................................................. 25

VI.   FINAL CERTIFICATION OF THE SETTLEMENT CLASSES FOR SETTLEMENT PURPOSES IS APPROPRIATE AND WARRANTED. ....................................... 25

VII.  THE METHOD AND FORM OF CLASS NOTICE SATISFIES RULE 23..................... 26

VIII. CONCLUSION............................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amos v. PPG Industries, Inc.*,
   2015 WL 4881459 (S.D. Ohio Aug. 13, 2015) ........................................................................ 19

*Anderson v. Travelex Insurance Servs. Inc.*,
   2021 WL 4307093 (D. Neb. Sept. 22, 2021)............................................................................ 12

*Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*,
   2017 WL 2574005 (D. Minn. June 14, 2017) ................................................................... 11, 19

*Blackwell v. Kraemer N. Am., LLC*,
   2024 WL 2014045 (D. Minn. May 7, 2024) ........................................................................... 13

*Braden v. Foremost Ins. Co. Grand Rapids, Michigan*,
   2018 WL 4903268 (W.D. Ark. Oct. 9, 2018).......................................................................... 18

*Briles v. Tiburon Fin., LLC*,
   2016 WL 4094866 (D. Neb. Aug. 1, 2016) ............................................................................ 19

*Burnett v. Nat'l Ass'n of Realtors*,
   2024 WL 2842222 (W.D. Mo. May 9, 2024)..................................................................... 14, 21

*Cleveland v. Whirlpool Corp.*,
   2022 WL 2256353 (D. Minn. June 23, 2022) ..................................................................... 12, 16

*Dekro v. Stern Bros. & Co.*,
   571 F. Supp. 97 (D. Mo. 1983)............................................................................................... 20

*Garner v. Butterball, LLC*,
   2012 WL 570000 (E.D. Ark. Feb. 22, 2012).......................................................................... 13

*Grunin v. Int'l House of Pancakes*,
   513 F.2d 114 (8th Cir. 1975) ....................................................................................... 12, 24, 26

*Huyer v. Van de Voorde*,
   314 F.R.D. 621 (S.D. Iowa 2016), *aff'd,* 847 F.3d 983 (8th Cir. 2017) .................................. 16

*In re Bankamerica Corp. Sec. Litig.*,
   210 F.R.D. 694 (E.D. Mo. 2002).......................................................................................... 18, 19

*In re Charter Commc'ns, Inc., Sec. Litig.*,
   2005 WL 4045741 (E.D. Mo. June 30, 2005) ........................................................................ 11

*In re Computron*,
 6 F.Supp.2d 313 (D.N.J. 1998) ............................................................................. 25

*In re Employee Benefit Plans Sec. Litig.*,
 1993 WL 330595 (D. Minn. June 2, 1993) ............................................................ 19

*In re Eng'g Animation Sec. Litig.*,
 203 F.R.D. 417 (S.D. Iowa 2001) .......................................................................... 24

*In re Ikon Office Solutions*,
 194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................ 25

*In re Target Corp. Customer Data Sec. Breach Litig.*,
 892 F.3d 968 (8th Cir. 2018) ........................................................................... 18, 23

*In re Telectronics Pacing Sys.*,
 137 F. Supp. 2d 985 (S.D. Ohio 2001) ............................................................. 20, 25

*In re Wireless*,
 396 F.3d 922 (8th Cir. 2005) ................................................................................. 12

*In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*,
 364 F. Supp. 2d 1013 (D. Minn. 2005) .................................................................. 21

*Keil v. Lopez*,
 862 F.3d 685 (8th Cir. 2017) ................................................................................. 19

*Khoday v. Symantec Corp.*,
 2016 WL 1637039 (D. Minn. Apr. 5, 2016), *report and recommendation adopted*,
 2016 WL 1626836 (D. Minn. Apr. 22, 2016) .......................................................... 15

*Kim v. Progressive Direct Ins. Co.*,
 No. 4:25-cv-00145-JM, ECF No. 1 (Feb. 20, 2025) ................................................. 5

*Kloster v. McColl (In re BankAmerica Corp. Sec. Litig.)*,
 350 F.3d 747 (8th Cir. 2003) ................................................................................. 24

*Lee v. Ocwen Loan Servicing, LLC*,
 2015 WL 5449813 (S.D. Fla. Sept. 14, 2015), *judgment entered*,
 2015 WL 11170648 (S.D. Fla. Sept. 14, 2015), and *objections overruled*,
 2015 WL 11181651 (S.D. Fla. Dec. 18, 2015) ........................................................ 17

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*,
 921 F.2d 1371 (8th Cir. 1990) ............................................................................... 11

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ........................................................................... 19

*Niewinski v. State Farm Life Ins. Co.*,
   2024 WL 4902375 (W.D. Mo. Apr. 1, 2024) ................................................. 13

*Petrovic v. AMOCO Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ................................................................. 11, 26

*Pfizer v. Lord*,
   456 F.2d 532 (8th Cir. 1972) ......................................................................... 11

*Phillips v. Caliber Home Loans, Inc.*,
   2022 WL 832085 (D. Minn. Mar. 21, 2022) ................................................. 19

*Risch v. Natoli Eng'g Co., LLC*,
   2012 WL 3242099 (E.D. Mo. Aug. 7, 2012) ................................................. 23

*Stuart v. State Farm Fire & Cas. Co.*,
   2020 WL 2892819 (W.D. Ark. June 2, 2020) ........................................... 18, 20

*Van Horn v. Trickey*,
   840 F.2d 604 (8th Cir. 1988) ................................................................... 12, 24

*Whitley v. Baptist Health*,
   2022 WL 16824654 (E.D. Ark. Nov. 8, 2022) ............................................... 12

*Zilhaver v. UnitedHealth Grp., Inc.*,
   646 F. Supp. 2d 1075 (D. Minn. 2009) ......................................................... 23

**Rules**

Fed. R. Civ. P. 23 ..................................................................................... 1, 2, 28
Fed. R. Civ. P. 23(3) ............................................................................................ 7
Fed. R. Civ. P. 23(a) ................................................................................. 4, 7, 26
Fed. R. Civ. P. 23(b)(3) ............................................................................ 4, 7, 26
Fed. R. Civ. P. 23(e) .......................................................................................... 26
Fed. R. Civ. P. 23(e)(2) ............................................................... 7, 11, 12, 17
Fed. R. Civ. P. 23(e)(2)(A) ................................................................................ 13
Fed. R. Civ. P. 23(e)(2)(C) ................................................................................ 21
Fed. R. Civ. P. 23(e)(2)(C)(iv) .......................................................................... 22
Fed. R. Civ. P. 23(e)(3) .............................................................................. passim
Fed. R. Civ. P. 23(f) ............................................................................................ 4

**Other Authorities**

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* ................................................................................................................. 27

## I.    **INTRODUCTION.**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP") and the Court's Order Granting Preliminary Approval of Class Action Settlement, dated May 19, 2025 (ECF No. 184, the "Preliminary Approval Order"), Plaintiffs Erik Knight and Jung Kim ("Plaintiffs" or "Class Representatives") respectfully submit this memorandum of law in support of final approval of the proposed settlement (the "Settlement") of this class action (the "Action").

The Settlement fully and finally resolves all claims asserted in the actions against Progressive Northwestern Insurance Company, Progressive Direct Insurance Company, Progressive Casualty Insurance Company, Progressive Specialty Insurance Company, and Progressive Classic Insurance Company (collectively, "Progressive" or "Defendants"). The Settlement delivers complete, direct, and immediate relief to every Settlement Class Member who submits a simple claim form: each claimant will receive 100% of his or her individual PSA Impact Amount, calculated from Defendants' own data. Nothing will be deducted from those payments as Progressive has agreed to bear separately all court-approved attorneys' fees, litigation expenses, service awards, and notice and administration costs. Based on the Parties' analyses of Progressive's claims databases, the Settlement makes available an estimated $13,211,773 in cash benefits, with an average payment of approximately $506 per claim, in addition to the ancillary benefits of comprehensive notice and claims administration at no cost to the Settlement Classes. Class Counsel believe this is an excellent result for Settlement Class Members.

The Settlement is the product of extensive investigation, approximately three years of hard-fought litigation, and arm's-length negotiations conducted by experienced counsel with the assistance of nationally respected mediator, Steven R. Jaffe. It embodies a fair, reasonable, and adequate compromise that eliminates the risks of continued litigation—risks magnified by the

unpredictability of a jury trial and a likely appeal by Defendants even if Plaintiffs were to prevail at trial. Accordingly, the terms and conditions of the Settlement were fairly negotiated and reflect a fully informed and fair compromise.

The Notice Plan has now been implemented as the Court directed in its Preliminary Approval Order, with individual notice efforts reaching approximately 99% of the identified Settlement Class Members. *See* Declaration of Cameron R. Azari, Esq. on Implemental and Adequacy of Settlement Notice Plan ("Supp. Azari Decl.") at ¶¶ 7, 17, and 27. In addition to an impressive reach of 99%, the Notice Plan is uncommonly robust, including three rounds of email notice and three rounds of postcard notice. *See id*. at ¶¶ 14-17, and 25; *see also* ECF No. 179-1 (Settlement Agreement) at ¶ 7. That notice was further enhanced by a dedicated settlement website and a toll-free call center. Supp. Azari Decl. at ¶¶ 7, 18-20. To date, not a single Settlement Class Member has objected to or requested exclusion from the Settlement. *See id*. at ¶ 22.[1] Thus, the Settlement enjoys the support of the Settlement Classes.

Accordingly, Plaintiffs respectfully submit that the Settlement satisfies all criteria for final approval, and specifically request this Court: (1) grant final approval of the Settlement as fair, reasonable, and adequate; (2) grant final certification to the Settlement Classes; (3) find that the notice program as set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23(c) and due process and constitutes the best notice practicable under the circumstances; and (4) enter the proposed Final Approval Order and Judgment.

---

[1] Previously, during the Class Certification phase, two Class Members requested exclusion from the Action. *See id*. at ¶ 21. The deadline for objections and exclusion requests from the Settlement is August 7, 2025. Plaintiffs will update the Court after this deadline has passed.

II.    **FACTUAL AND PROCEDURAL BACKGROUND.**

A.  **OVERVIEW OF PLAINTIFFS' CLAIMS**

This Action arises from Progressive's systemic practice of applying "Projected Sold Adjustments" ("PSAs") when calculating the actual cash value ("ACV") of total-loss vehicles insured under its Arkansas automobile policies (the "Policies"). Plaintiffs contend that the PSA is an arbitrary deduction that improperly reduces total loss claim payments in breach of Progressive's promise to pay ACV—a promise embodied in its Policies' standardized language stating that ACV "is determined by the market value, age, and condition of the vehicle at the time of loss."

Defendants deny any wrongdoing and vigorously dispute liability and damages.

B.  **PROCEDURAL POSTURE**

1.  The Knight Action

Plaintiff Knight filed his class action complaint on August 4, 2022. *See* ECF No. 1. After Progressive Northwestern responded with an answer, ECF No. 3, the parties engaged in discovery and, on January 25, 2024, Plaintiff Knight moved for class certification. *See* ECF No. 41. The Motion for Class Certification was supported with voluminous evidence, including four expert reports. *See* ECF Nos. 41-1–41-21. Progressive opposed the motion, ECF No. 46, supported by reports of its own experts, among other evidence. *See* ECF Nos. 46-1–46-28. Plaintiff Knight filed a reply in support of the Motion for Class Certification on April 25, 2024. *See* ECF No. 51.

After the Motion for Class Certification was fully briefed, the Court held a hearing on class certification on May 30, 2024. *See* ECF No. 64. On July 1, 2024, the Court informed the parties via email that the Court "is going to grant Plaintiff's motion to certify the class" and requested a Notice Plan. *See* ECF No. 74. Thus, on July 19, 2024, Plaintiff Knight submitted a Motion for

Court to Approve Notice Program for Certified Class and Incorporated Brief, which was disputed. *See* ECF Nos. 74, 77, 102.

The Parties continued vigorously litigating this Action, including briefing several substantive motions. Plaintiff Knight moved to exclude the expert testimony of Progressive's experts Jonathan Walker and Marc Spizzirri, while Progressive moved to exclude the expert testimony of Plaintiff Knight's experts Kirk Felix, Jeffrey Martin, Dr. Michelle Lacey, and Jason Merritt. *See* ECF Nos. 78, 80, 81, 83, 84. These motions were fully briefed. *See* ECF Nos. 108, 109, 110, 112, 113, 114, 126, 127, 128, 129, 130, 132. Progressive also moved for summary judgment, ECF Nos. 86–87, which Plaintiff Knight opposed, ECF Nos. 115–116. *See also* Progressive's Reply, ECF Nos. 133– 134.

On December 19, 2024, this Court entered an order granting Plaintiff Knight's Motion for Class Certification. *See* ECF No. 141. The Court found that the proposed class of Progressive Northwestern insureds meets every requirement of Federal Rule of Civil Procedure of 23(a) and 23(b)(3), including that Plaintiff Knight is an adequate and typical Class member and that common issues predominate concerning the contractual claim. *Id*. Plaintiff Knight filed a Notice Plan shortly after the Court granted class certification, ECF No. 145, which the Court entered with minor modifications, ECF No. 153.

Progressive filed a Rule 23(f) petition with the Eighth Circuit Court of Appeals seeking interlocutory review of the order granting class certification. *See* ECF No. 155. After the petition was fully briefed, the Eighth Circuit denied the petition. *See* ECF No. 158 (8th Cir. Judgment); ECF No. 159 (Mandate of 8th Cir. in accordance with judgment of March 27, 2025).

After the Court granted class certification, Plaintiff Knight moved in limine to exclude any evidence of NADA and KBB guidebook values. *See* ECF No. 144. Progressive opposed the

motion, ECF No. 151, which was relevant to the motions to exclude Progressive's experts. On February 27, 2025, the Court held a hearing concerning the motions to exclude. *See* ECF No. 154. The Court partially granted Plaintiff Knight's motion to exclude Marc Spizzirri, while denying Progressive's motions to exclude Felix, Lacey, and Merritt. *Id*. As the case approached trial, Plaintiff Knight also successfully obtained a protective order preventing Progressive from taking a last-minute deposition pursuant to a subpoena of J.D. Power & Associates. *See* ECF Nos. 156, 160, 163, 164.

2.  The Kim Action

While the Knight Action was ongoing, Class Counsel filed a second similar complaint against Progressive Direct, which also insures Arkansas citizens. Specifically, on October 4, 2024, Plaintiff Kim filed a class action complaint against Progressive Direct in the Circuit Court of Faulkner County, Arkansas. *See Kim v. Progressive Direct Ins. Co*., No. 4:25-cv-00145-JM, ECF No. 1 (Feb. 20, 2025) (notice of removal). The Kim Action is materially identical to the Knight Action, except for being brought against a different Progressive entity, Progressive Direct, and having a different class period. *See* Kim ECF No. 2 (Kim Complaint). Plaintiff Kim served a copy of the complaint on Progressive Direct on January 21, 2025, after which a notice of removal was timely filed. *See* Kim Action, ECF No. 1. Progressive Direct answered the Kim complaint on March 6, 2025. *See* Kim Action, ECF No. 7. After Judge Wilson recused himself, the Kim Action was randomly reassigned to this Court. *See* Kim ECF No. 16.

3.  Settlement Negotiations

Recognizing the efficiencies of a potential global resolution, the Parties informed the Court on March 20, 2025 that they had agreed to a private mediation encompassing both the *Knight* and *Kim* Actions. *See* ECF No. 166. To prepare for mediation, Class Counsel undertook an extensive

and thorough review of the voluminous data produced by Progressive concerning all Settlement Class Members and the data supporting calculation of the PSA Impact Amount. Using its analysis of this data and other information gained in discovery, Class Counsel prepared a detailed mediation brief that set forth Plaintiffs' legal and factual positions. This rigorous preparation ensured that Plaintiffs entered mediation with a fully developed, data-driven strategy aimed at achieving a fair and informed resolution for the Classes.

On April 16, 2025, the Parties participated in a full-day mediation with Steven R. Jaffe, an experienced and respected mediator. As a result of the mediation process, the Parties were able to negotiate a term sheet that, in addition to resolving the pending lawsuits against Progressive Northwestern and Progressive Direct, also resolved claims against three other underwriters insuring Arkansas citizens: Progressive Casualty Insurance Company, Progressive Specialty Insurance Company, and Progressive Classic Insurance Company.

Following mediation, the Parties finalized and executed the Settlement Agreement, memorializing the terms and conditions of the Settlement and embodying all relevant exhibits thereto.

### 4.  Preliminary Approval and Notice Implementation

On May 8, 2025, Plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement, with a supporting memorandum of law and supporting declarations. *See* ECF Nos. 176-179. As part of the Settlement, on that same date, Plaintiffs also moved unopposed to file an Amended Class Action Complaint, ECF No. 175, which the Court granted, effectively consolidating the Knight and Kim Actions. *See* ECF Nos. 180 and 181.

On May 19, 2025, this Court entered the Preliminary Approval Order, ECF No. 184, finding (1) that it likely will be able to approve the Settlement as fair, reasonable, and adequate

under Rule 23(e)(2); (2) that it likely will be able to certify a class for purposes of judgment on the Settlement under Rules 23(a) and (b)(3); (3) that the proposed plan of notice to the Settlement Classes comports with due process and is reasonably calculated to apprise Settlement Class Members of the nature of the action, the scope of the Settlement Classes, the terms of the Settlement Agreement, the rights of the Settlement Class Members to object and to opt out, and the Final Fairness Hearing; and (4) scheduling a Final Fairness Hearing to determine whether this Court should enter a Judgment finally approving the Settlement and an order of dismissal of this action based upon the Settlement.

Thereafter, the Settlement Notice Plan was fully implemented by Epiq. *See generally* Supp. Azari Decl. Based on Epiq's notice efforts, individual notice reached approximately 99% of the identified Settlement Class Members, supplemented by a settlement website and toll-free helpline. *See id*. at ¶¶ 7-20, and 27. To date, not a single Settlement Class Member has objected to or requested exclusion from the Settlement. *See id*. at ¶ 22.[2]

## III.   <u>THE SETTLEMENT</u>.

### A.  THE SETTLEMENT BENEFITS

The Settlement is proposed on behalf of three Settlement Classes[3] defined as follows:

**Progressive Northwestern Class**: All persons who made a first-party claim on a policy of insurance issued by Progressive Northwestern Insurance Company to an Arkansas resident where the claim was submitted from August 4, 2017, through the date an order granting Preliminary Approval is entered, and Progressive determined that the vehicle was a total loss and based its claim payment on an Instant Report from Mitchell where a Projected Sold Adjustment was applied to at least one comparable vehicle.

---

[2] As stated above, previously, during the Class Certification phase, Epiq received two requests for exclusion. The Class Certification Exclusion Report, which identifies those two opt-outs, is attached to the Supplemental Azari Declaration as Attachment 7. *See* Supp. Azari Decl. at ¶ 21.
[3] Excluded from the Classes are Defendants and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members.

**Progressive Direct Class**: All persons who made a first-party claim on a policy of insurance issued by Progressive Direct Insurance Company to an Arkansas resident where the claim was submitted from October 4, 2019, through the date an order granting Preliminary Approval is entered, and Progressive determined that the vehicle was a total loss and based its claim payment on an Instant Report from Mitchell where a Projected Sold Adjustment was applied to at least one comparable vehicle.

**Other Underwriters Class**: All persons who made a first-party claim on a policy of insurance issued by Progressive Casualty Insurance Company, Progressive Specialty Insurance Company, or Progressive Classic Insurance Company to an Arkansas resident where the claim was submitted within five years prior to the date an order granting Preliminary Approval is entered,[4] and Progressive determined that the vehicle was a total loss and based its claim payment on an Instant Report from Mitchell where a Projected Sold Adjustment was applied to at least one comparable vehicle.

Under the Settlement, every Settlement Class Member who submits a simple claim form will receive 100% of their PSA Impact Amount. Attorney's fees, litigation expenses, service awards, and costs of notice and administration are paid separately by Defendants so there is zero reduction in any Settlement Class Member's individual payment. More specifically, the Settlement makes available approximately $13.2 million: (1) for the Progressive Northwestern Class, the average PSA Impact Amount is 4.02% of the ACV of each Settlement Class Members total loss vehicle, for a total of approximately $8,534,836; and (2) for the Progressive Direct and Other Underwriter Class, the average PSA Impact Amount is 3.17% of the ACV of each Settlement Class Members total loss vehicle, for a total of approximately $4,676,937. *See* ECF No. 179 at ¶¶ 20-21. Distributions will occur between 45 days to 60 days after the Effective Date. ECF No. 179-1 (Settlement Agreement) at ¶ 10(d). In addition to these cash benefits, under the Settlement, Defendants are to separately pay (1) attorneys' fees up to $3,963,531, (2) Class Counsel's out-of-

---

[4] As the Preliminary Approval Order was entered on May 19, 2025, the class period begins on May 19, 2020.

pocket litigation expenses up to $112,000, (3) costs of notice and administration up to $101,745; and (4) service awards up to $15,000. *See* ECF No. 179 at ¶¶ 39, 50-51 and ECF No. 179-6.

In exchange for the consideration from the Defendants, the Knight and Kim Actions will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will thereby release all Released Claims against the Released Parties. *See* ECF No. 179-1 at ¶¶ 1(hh), 1(jj), and 16-17. Released Claims include any claims arising out of Progressive's settlement of a total loss claim but the term expressly excludes any claims for personal injury, medical payment, uninsured motorist or underinsured motorist. *Id.*

## B.  NOTICE TO THE SETTLEMENT CLASSES

In accord with Paragraph 7 of the Settlement Agreement and the Court's Preliminary Approval Order, notice of the proposed Settlement to Settlement Class Members was made by (1) email (the "Email Notice") to Settlement Class Members for whom Progressive provided an associated e-mail address; (2) postal mail (the "Postcard Notice") to identified Settlement Class Members with an associated mailing address; and (3) posting a long-form notice (the "Long-Form Notice") on the Settlement Website in both English and Spanish. *See* Supp. Azari Decl. at ¶¶ 10-16, 18, and Exs. 1-4. The Notice Plan provides robust notice to the Settlement Classes—three rounds of Email Notice as well three rounds of Postcard Notice. *See id.* at ¶¶ 14-17, and 25; *see also* ECF No. 179-1 (Settlement Agreement) at ¶ 7.

The Notices included the following information: (1) a description of the class action and the proposed Settlement, (2) the rights of Settlement Class Members to request exclusion from the Settlement Classes or to object to the Settlement and instructions about how to exercise those rights, (3) specifics on the date, time and place of the Final Fairness Hearing, and (4) information

regarding Class Counsel's anticipated fee application and the anticipated request for the Class Representatives' service awards. *See* Supp. Azari Decl. at Exs. 1-4.

Both the Email Notice and the Postcard Notice included a link for the Settlement Website, which further included the following: (1) a "Contact Us" page with the Settlement Administrator's contact information; (3) important case documents, including the Settlement Agreement and the Court's Preliminary Approval Order; (4) important case dates and deadlines, including the deadlines to opt out and object; (5) a summary of Settlement Class Members' options; and (6) the date, time, and location of the Final Fairness Hearing. *See id.* at ¶ 18 and Exs. 1-2. Moreover, in accord with the Settlement Agreement and the Court's Preliminary Approval Order, Plaintiffs' Motion for Award of Attorneys' Fees, Litigation Costs, and Service Awards, along with the supporting memoranda, will be posted on the Settlement Website, when available.

### C. CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS

In accord with the Settlement Agreement, by separate motion, Class Counsel is requesting an award of attorneys' fees of $3,963,531, which represents 30% of the available cash benefits of $13,211,773 or roughly 23% of the total Settlement value of $17,404,049, litigation expenses of $112,000,[5] and service awards for the two Settlement Class Representatives in the sum of $15,000 ($10,000 for Plaintiff Knight and $5,000 for Plaintiff Kim). Progressive has agreed to pay any court-awarded attorney's fees, litigation expenses, and service awards separately, making them an additional benefit to the Settlement Classes. The enforceability of the Settlement Agreement is not

---

[5] When fully tallied, Class Counsel's out-of-pocket litigation expenses totaled $118,420.68. However, under the Settlement Agreement, Plaintiffs agreed to cap their reimbursement request at $112,000. As such, Class Counsel is seeking the lower amount of $112,000.

contingent on the Court's approval of Class Counsel's application for an award of attorneys' fees, litigation expenses, or service awards.

## IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT.

### A.  CRITERIA TO BE CONSIDERED IN ASSESSING WHETHER A CLASS ACTION SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of class action claims. A class action settlement should be approved if the court finds it "fair, reasonable, and adequate." *Id*. at 23(e)(2). The Eighth Circuit has recognized a strong policy favoring settlements, especially in class action cases. *See Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1,* 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law strongly favors settlements. Courts should hospitably receive them."); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors agreements, and courts should approach them with a presumption in their favor." (internal quotation omitted)); *Pfizer v. Lord*, 456 F.2d 532, 543 (8th Cir. 1972) ("[T]he policy of the law encourages compromise to avoid the uncertainties of the outcome of wasteful litigation and expense incident thereto."); *see also In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *4 (E.D. Mo. June 30, 2005) ("In the class action context in particular, there is an overriding public interest in favor of settlement." (citation and internal quotation marks omitted)); *Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, 2017 WL 2574005, at *2 (D. Minn. June 14, 2017) ("The Eighth Circuit recognizes that 'strong public policy favors settlement agreements, and courts should approach them with a presumption in their favor.'") (cleaned up).

Rule 23(e)(2), as amended effective December 1, 2018, provides that in determining whether a settlement is "fair, reasonable, and adequate," the Court should consider whether:

(A)    the class representatives and counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment;

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Along with the Rule 23(e)(2) factors, courts in this Circuit also consider: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *In re Wireless,* 396 F.3d 922, 932 (8th Cir. 2005) (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975)); *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988); *see also Whitley v. Baptist Health*, No. 4:16-CV-624-DPM, 2022 WL 16824654, at *1 (E.D. Ark. Nov. 8, 2022); *Cleveland v. Whirlpool Corp.*, No. 20-cv-1906, 2022 WL 2256353, at *5 (D. Minn. June 23, 2022); *Anderson v. Travelex Insurance Servs. Inc.*, No. 8:18-CV-362, 2021 WL 4307093, at *2 (D. Neb. Sept. 22, 2021).

## B.  THE SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL.

### 1.  The Settlement Class Representatives and Class Counsel Have Provided Excellent Representation to the Settlement Classes.

12

Rule 23(e)(2)(A)'s adequate representation inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *See, e.g., Garner v. Butterball, LLC*, No. 4:10CV01025 JLH, 2012 WL 570000, at \*4 (E.D. Ark. Feb. 22, 2012); *Niewinski v. State Farm Life Ins. Co.*, No. 23-04159-CV-C-BP, 2024 WL 4902375, at \*5 (W.D. Mo. Apr. 1, 2024). In this regard, the adequacy requirement is met when "the Class Representatives have no interests antagonistic to or in conflict with the Settlement Class and have retained experienced and competent counsel to prosecute th[e] matter on behalf of the Settlement Class." *Blackwell v. Kraemer N. Am., LLC*, No. 23-CV-1851 (KMM/LIB), 2024 WL 2014045, at \*1 (D. Minn. May 7, 2024).

Here, the Settlement Class Representatives have adequately represented the Settlement Classes in this Action. They have been actively involved throughout the course of the litigation and Settlement, assisting Class Counsel in investigating the claims on an individual basis, reviewing case documents, remaining apprised of the litigation, submitting information necessary for discovery efforts and overseeing settlement negotiations. *See* Declaration of Hank Bates in Support of Plaintiffs' Motions for (i) Final Approval of Class Action Settlement, and (ii) Attorneys' Fees, Litigation Expenses, and Service Awards ("Supp. Bates Decl.") at ¶¶ 28 and 62. Additionally, Plaintiff Knight provided extensive deposition testimony. *See id*. These efforts, including the risks they voluntarily took as well as the time they expended advancing the litigation, were crucial to achieving the excellent result for the Settlement Classes. *Id*. The Settlement Class Representatives have no conflict with the Settlement Classes, assert no claim for individual relief, and were prepared to testify at trial. *See id.*

Class Counsel likewise have adequately represented the Settlement Classes. Class Counsel are well-qualified and experienced class action litigators, and have extensive, nationwide

experience in similar consumer class action. *See* Supp. Bates Decl. at ¶ 46; *see also* Plaintiffs'
Motion for Attorneys' Fees. Further, Class Counsel litigated this case to the very eve of trial,
performing such tasks as: extensive pre-suit factual investigation; drafting the complaints;
engaging in fact and expert discovery regarding the merits of Plaintiffs' claims and class
certification; successfully certifying the Classes; engaging in substantial motions practice,
including summary judgment, *Daubert* briefing, and interlocutory appeals; participating in a full-
day mediation; achieving a very favorable Settlement on behalf of the Settlement Classes; drafting
the Settlement Agreement and all related exhibits; presenting the proposed Settlement to the Court
and obtaining an order directing notice to the Settlement Classes; and working with the Settlement
Administrator to implement the Court-approved Notice Plan and to address any other issues that
may arise. Furthermore, Class Counsel have no conflicts of interest with the Settlement Classes.
*See* Supp. Bates Decl. at ¶ 47. Thus, this factor weighs in favor of the Settlement. *See Burnett v.
Nat'l Ass'n of Realtors*, No. 4:19-CV-00332-SRB, 2024 WL 2842222, at *4 (W.D. Mo. May 9,
2024) (granting final approval upon concluding "[t]he Class Representatives have adequately
represented the class, the Settlement Agreements were negotiated at arm's-length by experienced
counsel acting in good faith, including mediation with a nationally recognized and highly
experienced mediator, and the Settlement Agreements were reached as a result of those
negotiations.").

### 2. The Settlement Was Negotiated at Arm's Length by Experienced Counsel Informed Through a Developed Factual Record, With No Signs of Collusion.

A settlement is fair, reasonable and adequate when it is reached after arm's-length
negotiations between experienced counsel with the assistance of a neutral mediator. *Khoday v.
Symantec Corp.*, No. 11-CV-180 (JRT/TNL), 2016 WL 1637039, at *8 (D. Minn. Apr. 5, 2016),

*report and recommendation adopted*, No. 11-CV-0180 (JRT/TNL), 2016 WL 1626836 (D. Minn. Apr. 22, 2016). The pre-negotiation exchange of discovery further contributes to a settlement's fairness, reasonableness, and adequacy. *See id.* (noting a court may consider "the settlement's timing, including whether discovery proceeded to the point where all parties were fully aware of the merits.").

Here, prior to and during the mediation process, the Parties engaged in substantial discovery and motions practice, also preparing and reviewing detailed mediation statements outlining their respective legal positions regarding the merits of Plaintiffs' claims, Rule 23 considerations, and the scope of damages. *See* Supp. Bates Decl. at ¶¶ 3-13. During mediation before experienced mediator Steven R. Jaffe, counsel for the Parties vigorously defended their clients' positions with each side having full knowledge of all issues in the case. These difficult and adversarial negotiations, combined with the benefit of voluminous discovery, allowed Class Counsel—attorneys with considerable experience—to make an informed assessment of the strengths and risks of the claims, and balance the benefits of settlement against the risks of continued litigation. *Id.* at ¶¶ 36-39, and 49. At the end of a full-day mediation session, the Parties were able to reach an agreement in principle. This was followed by additional negotiations to memorialize the Settlement documents. *Id.* at ¶¶ 12-13. Thus, the Settlement here is the result of arm's-length negotiations between capable counsel and with the assistance of an experienced mediator, following a thorough investigation and development of the factual record through formal discovery.

Moreover, the Settlement terms themselves demonstrate a lack of unfair collusion during settlement negotiations. Attorneys' fees were negotiated separately and are to be paid separately from, *i.e.* in addition to, the funds made available to Settlement Class Members, and there is no

15

"clear sailing" provision. *See Cleveland,* 2022 WL 2256353, at *5 (finding the record reflected arm's length negotiations which demonstrated "a lack of collusion"). Further, the claims-made methodology of the Settlement is within the bounds of reasonableness. The Settlement provides for 100% of a Settlement Class Member's PSA Impact Amount after a robust Notice Plan designed to maximize participation. The claims process is non-burdensome, merely allowing the Settlement Administrator to verify the claimant is entitled to payment. *See* Section IV(B)(3)(ii). Notice is robust, with three rounds of Email Notice coupled with three rounds of Postcard Notice so that all Settlement Class Members will be provided ample notice of their opportunity to receive a significant payment, averaging $506. *See* Supp. Azari Decl. at ¶¶ 26-30. And, as noted above, any court-approved attorneys' fee, litigation expenses, and service awards are to paid in addition to the funds made available to Settlement Class Members, as are costs for notice and administration, meaning payment of these items will not diminish Settlement Class Members' recoveries. This approach ensures that every dollar of Settlement Class Members' PSA Impact Amounts is available for direct payment to participating Settlement Class Members, thereby eliminating any concern about disproportionality and minimizing the amount to revert to Defendants only to those checks remaining uncashed by Settlement Class Members. As such, the claims-made structure of the Settlement is both reasonable and well-suited to the circumstances of the case, striking a fair balance between the certainty of immediate payments to Settlement Class Members and the inherent risks and delays of continued litigation and appellate review. *See Huyer v. Van de Voorde*, 314 F.R.D. 621, 627 (S.D. Iowa 2016) (finding "there are valid reasons" to approve a settlement requiring submission of a claim form), *aff'd*, 847 F.3d 983 (8th Cir. 2017); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-CV-60649, 2015 WL 5449813, at *2 (S.D. Fla. Sept. 14, 2015), *judgment entered*, No. 14-CV-60649, 2015 WL 11170648 (S.D. Fla. Sept. 14, 2015), and *objections*

*overruled*, No. 14-CIV-60649, 2015 WL 11181651 (S.D. Fla. Dec. 18, 2015) ("Indeed, one district court touted settlements like this—that provide near-complete relief to class members on a claims-made basis—as extraordinary, and particularly so when compared to direct-pay force-placed insurance settlements that compensate all members of a settlement class, but provide far less relief to each class member and with payments that bore little, if any, relation to the actual losses suffered by individual class members.").[6]

### 3.    The Settlement Provides Meaningful Relief to the Settlement Classes.

When determining if the relief provided for the Settlement Classes is adequate, courts must take into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2). These factors are further informed by the four factors adopted by the Eighth Circuit in *Grunin* and *Van Horn*. Here, all factors weigh in favor of final approval.

> i.    *The Merits of Plaintiffs' Case Balanced Against the Terms of the Settlement, and the Costs, Risks, and Delays of Continued Litigation Through Trial and Appeal.*

"The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the

---

[6] *See also Feldman v. Star Trib. Media Co. LLC*, No. 22-CV-1731 (ECT/TNL), 2024 WL 3026556, at *8 (D. Minn. June 17, 2024) (approving claims-made settlement); *Bishop v. DeLaval Inc.*, No. 5:19-CV-06129-SRB, 2022 WL 18957112, at *1 (W.D. Mo. July 20, 2022) (approving claims-made settlement); *Shames v. Hertz Corp.*, No. 07-CV-2174-MMA WMC, 2012 WL 5392159, at *9 (S.D. Cal. Nov. 5, 2012) ("However, there is nothing inherently objectionable with a claims-submission process, as class action settlements often include this process, and courts routinely approve claimsmade settlements.").

settlement." *In re Bankamerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002); *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 978 (8th Cir. 2018) ("The first factor, a balancing of the strength of the plaintiff's case against the terms of the settlement, is the single most important factor." (internal quotation marks omitted; cleaned up)). In assessing the Settlement, the Court should weigh the strength of Plaintiffs' case on the merits in light of the uncertainties of fact and law against the immediacy and certainty of the money offered in the settlement and the potential recovery by the class. *See Stuart v. State Farm Fire & Cas. Co.*, No. 4:14-CV-4001, 2020 WL 2892819, at *5 (W.D. Ark. June 2, 2020) (finding settlement "will result in substantial savings in time and resources to the Court and the litigants and will further the interests of justice" and granting final approval after review); *Braden v. Foremost Ins. Co. Grand Rapids, Michigan*, No. 4:15-CV-4114, 2018 WL 4903268, at *5 (W.D. Ark. Oct. 9, 2018) ("The settlement of the Lawsuit on the terms, conditions, and limitations set forth in the Stipulation is approved and confirmed in all respects as fair, reasonable, and adequate and in the best interests of the Settlement Class, especially in light of the benefits made available to the Settlement Class and the costs and risks associated with the continued prosecution, trial, and possible appeal of this complex litigation.").

The Court's analysis of the benefits of the Settlement need only be a rough approximation of risks of continued litigation rather than an attempt to reach conclusions as to the merits of the case:

> In evaluating this factor, the Court's task is not to reach any conclusions as to the merits of the plaintiffs' case, nor should the Court substitute its opinion for that of plaintiffs' counsel and members of the class. . . . Rather, the determination herein generally will not go beyond "an amalgam of delicate balancing, gross approximation, and rough justice."

*In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 WL 330595, at *4 (D. Minn. June 2, 1993) (citations omitted). In this regard, the "reasonableness" of a settlement "is not susceptible to a mathematical equation yielding a particularized sum." *Amos v. PPG Industries, Inc*., Case No. 2:05-cv-70, 2015 WL 4881459, at *3 (S.D. Ohio Aug. 13, 2015). Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *cf. Keil v. Lopez*, 862 F.3d 685, 696 (8th Cir. 2017); *Briles v. Tiburon Fin., LLC*, Case No. 8:15CV241, 2016 WL 4094866, at *5 (D. Neb. Aug. 1, 2016).

The Settlement in this case definitely falls within the "range of reasonableness." Under the Settlement, every Settlement Class Member is entitled to receive 100% of their PSA Impact Amount, with attorney's fees, litigation expenses, service awards, and costs of notice and administration paid separately so there is zero reduction in any Settlement Class Member's individual payment. As such, the Settlement makes available an estimated $13,211,773 for the benefit of the Settlement Classes, with an average payment of approximately $506 per claim. This recovery falls well within the range of reasonableness. *See Phillips v. Caliber Home Loans, Inc.*, No. 19-CV-2711 (WMW/LIB), 2022 WL 832085, at *2 (D. Minn. Mar. 21, 2022) (approving $5,000,000 settlement, representing approximately 29% of damages); *Keil*, 862 F.3d at 696 (finding settlement "representing 27 percent of the maximum recovery at trial, is a compromise well within the fair and reasonable range."); *Beaver Cnty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 014CV00786ADMTNL, 2017 WL 2574005, at *3 (D. Minn. June 14, 2017) (finding that recovery of $9.5 million, representing a recovery of approximately 6.8% to 9.5% of the Class's maximum damages was within the range of reasonableness). Class Counsel believe this is a significant recovery for Settlement Class Members. *See In re Bankamerica*, 210 F.R.D. at 701 (recognizing that in weighing "the significance of immediate recovery by way of the

compromise to the mere probability of relief in the future, after protracted and expensive litigation," it is "proper to take the bird in the hand instead of a prospective flock in the bush.").

In contrast to the tangible, immediate benefits of the Settlement, the outcome of continued litigation and a trial against Defendants is uncertain. *See Stuart*, 2020 WL 2892819, at *3 (finding settlement "has the benefit of providing substantial benefits to Class Members now, without further litigation, under circumstances where the liability issues are still vigorously contested among the Parties and the outcome of any class trial or appeal remain uncertain," and finally approving the settlement). And while Plaintiffs are confident in the strength of their claims, they nevertheless recognize that this litigation is inherently risky. Throughout these proceedings, counsel for the Defendants, attorneys at King & Spalding, a prominent law firm with more than 1,300 lawyers in 25 offices globally, vigorously defended their client's position and demonstrated their commitment to litigate this Action to its conclusion. *See* Supp. Bates Decl. at ¶ 51. Plaintiffs would need to survive Defendants' pending motion for summary judgment and would likely be faced with a decertification motion. Plaintiffs then would need to prevail at trial and secure an affirmance on a likely appeal before recovering damages. Ultimately, continued litigation could add several more years before there is a resolution. Accordingly, there is no question that continued litigation would greatly increase the expense and duration of this Action. *See Dekro v. Stern Bros. & Co.*, 571 F. Supp. 97, 100 (D. Mo. 1983) (settlement approved where "further litigation in this action would have been lengthy, complex, and expensive"); *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (settlement serves laudable goal of eliminating costs and time attendant to continued litigation) (citation omitted).

Moreover, the delay through trial, post-trial motions and the appellate process could deny the Classes any recovery for years and add substantial time and costs to the litigation. *See In re*

20

*Xcel Energy, Inc. Sec., Derivative & ERISA Litig.,* 364 F. Supp. 2d 1013 (D. Minn. 2005) (finding settlement removed the risks, delay, and costs associated with continued litigation while delivering assured benefits to the Class and weighed in favor of final approval). Avoiding these unnecessary expenditures of time and resources clearly benefits all Parties and the Court. *Burnett*, 2024 WL 2842222, at *4 ("[E]xperience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict.").

In sum, the Settlement provides meaningful benefits to the Settlement Classes now, while continued litigation would be complex, time consuming and expensive—with a substantial likelihood that, even if Plaintiffs ultimately prevailed on liability, the Classes would not recover a significantly greater amount than the amount presently provided for in the proposed Settlement. Therefore, this Court should find that these factors militate in favor of final approval of the Settlement.

   *ii. Effectiveness of Any Proposed Method of Distributing Relief to the Class.*

Rule 23(e)(2)(C) (ii) requires that the "proposed method of distributing relief to the class" be "effective." Under the Settlement, any Settlement Class Member who submits a valid claim is entitled to receive 100% of his or her individual PSA Impact Amount. The claims process involves a simple and straightforward Claim Form, written in plain language to encourage Settlement Class Members to file claims. The Claim Form is streamlined, requiring only the minimal information necessary to confirm membership in the Settlement Classes and to direct financial payments to Settlement Class Members without requiring the submission of additional documents. *See* Supp. Azari Decl. at Exs. 5-6. Settlement Class Members are able to submit their Claim Forms online via the Settlement Website or by simply detaching, completing and mailing the provided postcard (postage prepaid). Moreover, the Settlement Class Members receive ample

notice and reminders to file claims—three rounds each of Postcard and Email Notice. Thus, the methods of processing Settlement Class Members Claim Forms and distributing relief to Settlement Class Members are effective and non-burdensome. As such, this factor weighs in favor of final approval.

> ### iii. *The Requested Attorneys' Fees and Litigation Expenses Are Reasonable, Reflective of the Quality of Counsel's Skills and Work, and In Line with Similar Awards Approved in the Eighth Circuit.*

As set forth in Plaintiffs' Motion for Attorneys' Fees, Class Counsel is seeking an award of attorneys' fees of $3,963,531, which represents 30% of the available cash benefits of $13,211,773 or roughly 23% of the total Settlement value of $17,404,049, and reimbursement of out-of-pocket litigation expenses in the amount of $112,000. *See also* Supp. Bates Dec. at ¶¶ 17, 42, and 54-59. Class Counsel's fee and expense requests are reasonable compared to the benefits Class Counsel have achieved for Settlement Class Members, the experience and ability of Class Counsel, and similar fee awards in the Eighth Circuit. *See* Plaintiffs' Motion for Attorneys' Fees.

In addition to the foregoing, Plaintiffs are also seeking award of a service award in the amount of $10,000 for Plaintiff Knight and $5,000 for Plaintiff Kim for serving as the Class Representatives in this Action, which is both reasonable and directly in line with their contributions to the Action and similar awards approved in the Eighth Circuit. *See id*.

> ### iv. *There Is No Agreement Required to Be Identified under Rule 23(e)(3).*

Rule 23(e)(2)(C)(iv) requires consideration of "any agreement required to be identified under Rule 23(e)(3)." There are no additional agreements outside of the Settlement Agreement that require identification under Rule 23(e)(3).

> ### v. *Defendants' Financial Condition.*

Defendants are solvent companies, and there is no indication that they will be unable to pay or will incur undue hardship because of the Settlement. Accordingly, consideration of Defendants' financial condition weighs in favor or is neutral to the fairness analysis. *See Risch v. Natoli Eng'g Co., LLC*, No. 4:11CV1621 AGF, 2012 WL 3242099, 9-10 (E.D. Mo. Aug. 7, 2012); *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d at 978.

> vi. *The Lack of Opposition to the Settlement.*

The number of class members who opt out of a class or who object to a settlement is relevant, though not conclusive, to whether the settlement is reasonable. *See Petrovic*, 200 F.3d at 1152 (identifying "the amount of opposition to the settlement" as a factor for the court to consider in approving a settlement agreement). The reaction of the Settlement Classes here supports final approval of the Settlement. Pursuant to the Preliminary Approval Order, an Email Notice and/or Postcard Notice was delivered to 25,084 of the 25,129 unique, identified Settlement Class Members. *See* Supp. Azari Decl. at ¶ 17. The Notices describe the nature and procedural history of the Action and the terms of the Settlement and advise Settlement Class Members of their right to opt out or to object. *See id.* at Exs. 1-4. As of July 31, 2025, not one Settlement Class Member has objected to the Settlement, and not one Settlement Class Member has requested to be excluded from the Settlement after implementation of the Settlement Notice Plan. *See id.* at ¶ 22.[7] The lack of any objections to the Settlement constitutes further support that the Settlement is fair, adequate and in the best interest of the Settlement Classes. *See Zilhaver v. UnitedHealth Grp., Inc.,* 646 F. Supp. 2d 1075, 1080 (D. Minn. 2009) ("The Court also considers that after notice to over 23,000 class members, there has not been a single objection. Without any class objection, this factor strongly

---

[7] Previously, during the Class Certification phase, Epiq received two requests for exclusion. The Class Certification Exclusion Report, which identifies those two opt-outs, is attached to the Supplemental Azari Declaration as Attachment 7. *See* Supp. Azari Decl. at ¶ 21.

supports settlement approval."); *Kloster v. McColl (In re BankAmerica Corp. Sec. Litig.)*, 350 F.3d 747, 750 (8th Cir. 2003) (settlement determined to be fair and reasonable where there were ten objections out of "the hundreds of thousands of eligible class members"); *In re Eng'g Animation Sec. Litig.*, 203 F.R.D. 417, 422 (S.D. Iowa 2001) ("[T]he Court notes there was minimal opposition to this settlement. This weighs in favor of finding it fair."). Therefore, there is no doubt that this factor weighs in favor of the proposed Settlement.

Accordingly, consideration of each of Rule 23(e)(3)'s four subfactors, as well as the additional factors espoused by the Eighth Circuit in *Grunin* and *Van Horn*, weighs in favor of final approval.

### 4. The Settlement Treats Settlement Class Members Equitably Relative to Each Other.

Here, the Settlement is designed to benefit all Settlement Class Members equitably. As set forth in the Settlement Agreement, any individual who submits a valid Claim Form will receive 100% of the PSA Impact Amount to their specific claim, with an average cash payment of approximately $506. *See* ECF No. 179 at ¶¶ 8-9. The PSA Impact Amount is a set percentage that is applied in the same manner to the value of the totaled vehicle of each Settlement Class Member. *Id*. The reason for the difference in the percentages applied to the Settlement Classes is that the actual PSA Impact Amount has diminished over time and the Settlement Classes encompass different time periods. Supp. Bates Decl. ¶ 32. Importantly, the PSA Impact Amount is uniformly applied to each Settlement Class Member in an equal manner. *Id.* To ensure fair treatment, individual recoveries will vary depending on the value of the totaled vehicle (claims for totaled vehicles with higher ACVs will receive proportionately larger recoveries). Thus, there is no unfair or preferential treatment of any Settlement Class Member, and this factor weighs in favor of final approval.

**V.    THE PLAN OF ALLOCATION IS ADEQUATE, FAIR AND REASONABLE AND SHOULD BE APPROVED.**

The approval of a plan of allocation of settlement proceeds is "governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate.'" *In re Ikon Office Solutions*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) (citing *In re Computron*, 6 F.Supp.2d 313, 321 (D.N.J. 1998); *see also Telectronics*, 137 F. Supp. 2d at 985 (finding settlement and plan of allocation fair, adequate and reasonable). Generally, "a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *Ikon*, 194 F.R.D. at 184.

As set forth above, the plan for allocating the Settlement benefits entitles each Settlement Class Member to 100% of his or her PSA Impact Amount, which is calculated relative to the value of the total loss claim, and was designed to ensure that every dollar of Settlement Class Members' PSA Impact Amounts is available for direct payment to participating Settlement Class Members. As such, the plan of allocation, which was fully disclosed to members of the Settlement Classes, ensures an equitable distribution among eligible claimants, making it fair, reasonable, and adequate. Accordingly, the plan of allocation should be approved.

**VI.    FINAL CERTIFICATION OF THE SETTLEMENT CLASSES FOR SETTLEMENT PURPOSES IS APPROPRIATE AND WARRANTED.**

Plaintiffs respectfully request that the Court enter final certification of the Settlement Classes for purposes of effectuating the Settlement.

This Court previously found that class treatment is appropriate for this Action. *See* ECF No. 141. The only material change between the Classes already certified by the Court and the proposed Settlement Classes is that the proposed Settlement Classes extends the class period up through the date on the Preliminary Approval Order and adds four additional Progressive entities.

As such, the Court's reasoning in its order granting class certification applies equally to all five

Progressive entities because

> all Settlement Class Members were subject to insurance policies with contractual language materially like Plaintiff Knight's policy, were all promised an ACV payment for their total loss vehicle, and all had that payment reduced through Progressive's uniform application of the PSA. For the reasons previously articulated in this Court's Class Certification Order, the Court preliminarily finds the Settlement Classes satisfy the requirements of Federal Rule of Civil Procedure 23(a); the Settlement Classes are comprised of tens of thousands of individuals; there are questions of law or fact common to the Settlement Classes (e.g., whether Progressive's application of PSAs resulted in paying class members less than the ACV of their totaled vehicles); the Class Representatives' claims are typical of those of Settlement Class Members; and the Class Representatives and Class Counsel will fairly and adequately protect the interests of the Settlement Classes.

ECF No. 184 at pp. 4-5. Additionally,

> the Settlement Classes satisfy the requirements of Federal Rule of Civil Procedure 23(b)(3) for the same reasons previously articulated in this Court's Class Certification Order (ECF No. 141): Common questions of law and fact predominate over individualized issues, and class-wide adjudication is superior to other available methods of fairly and efficiently adjudicating the controversy.

*Id*.

## VII.    **THE METHOD AND FORM OF CLASS NOTICE SATISFIES RULE 23**.

Rule 23(e) requires that notice of a proposed compromise of a class action be given to all

members of the class in such manner as the court directs. Generally, notice need only be

"reasonably calculated, under all the circumstances." *Petrovic*, 200 F.3d at 1153 ("The Supreme

Court has found that the notice must be reasonably calculated, under all the circumstances, to

apprise interested parties of the pendency of the action and afford them an opportunity to present

their objections." (internal quotation marks omitted)); *see also Grunin*, 513 F.2d at 121 ("the

mechanics of the notice process are left to the discretion of the court subject only to the broad

"reasonableness" standards imposed by due process.").

Here, notice was accomplished through: (a) *three rounds*, each, of individual Email and Postcard Notices; (b) posting the Long-Form Notice on the Settlement Website; and (c) establishment of a call center with a toll-free number. *See* Supp. Azari Decl. at ¶¶ 10-20, and 25. Based on this Notice Plan, it is estimated that notice reached at least 99% of Settlement Class Members to whom notice was sent, which *exceeds* the range deemed reasonable by the Federal Judicial Center. *See id*. at ¶¶ 7, 14-17, and 27; ECF No. 179-1 (Settlement Agreement) at ¶ 7; *see also* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (describing a notice plan as "reasonable" if it has a "reach between 70-95%").

Moreover, the content of the notices sufficiently advised Settlement Class Members of the essential terms of the Settlement; the rights of Settlement Class Members to share in the recovery and the process for submitting a claim, to request exclusion from the Settlement Classes, or to object to the Settlement; and the date, time and place of the Final Fairness Hearing. Thus, the Notices provided the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The Notices also contained information regarding Class Counsel's application for attorneys' fees and reimbursement of litigation expenses, the proposed plan for allocating the Settlement proceeds among Settlement Class Members, and the application for service awards to the Settlement Class Representatives.

In short, the form and manner of notice proposed here fulfill the requirements of Rule 23 and due process. *See* Supp. Azari Decl. at ¶¶ 26-30.

## VIII.    <u>CONCLUSION.</u>

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter an order, substantially in the form of the proposed Final Approval Order:  (i) granting final approval of the

Settlement as fair, reasonable, and adequate; (ii) granting final certification to the Settlement Classes; and (iii) finding that the notice program as set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23 and due process and constitutes the best notice practicable under the circumstances.

Dated: August 1, 2025                    Respectfully submitted,

Hank Bates (ABN 980563)
Tiffany Wyatt Oldham (ABN 2001287)
Lee Lowther (ABN 2013142)
CARNEY BATES & PULLIAM, PLLC
One Allied Drive, Suite 1400
Little Rock, AR 72202
Tel: (501) 312-8500
Email: hbates@cbplaw.com
Email: toldham@cbplaw.com
Email: llowther@cbplaw.com

Andrew J. Shamis (admitted *pro hac vice*)
Edwin E. Elliott (admitted *pro hac vice*)
Christopher Berman (admitted *pro hac vice*)
SHAMIS & GENTILE, P.A.
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
Email: ashamis@shamisgentile.com
Email: edwine@shamisgentile.com
Email: cbergman@shamisgentile.com

Joshua R. Jacobson (admitted *pro hac vice*)
JACOBSON PHILLIPS PLLC
2277 Lee Road, Suite B
Winter Park, FL 32789
Tel: (407) 720-4057
Email: jacob@jacobsonphillips.com

Brian A. Glasser (admitted *pro hac vice*)
James L. Kauffman (ABN 2003050)
BAILEY & GLASSER, LLP
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007

Tel: (202) 463-2101
Email: bglasser@baileyglasser.com
Email: jkauffman@baileyglasser.com

David L. Selby, II (admitted *pro hac vice*)
BAILEY & GLASSER LLP
3000 Riverchase Galleria, Suite 905
Birmingham, AL 35244
Telephone: (205) 835-9906
Email: DSelby@baileyglasser.com

Scott Edelsberg (admitted *pro hac vice*)
EDELSBERG LAW, P.A.
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
Tel: (786) 289-9469
Email: scott@edelsberglaw.com

Edmund A. Normand (admitted *pro hac vice*)
Christopher M. Hudon (admitted *pro hac vice*)
NORMAND PLLC
3165 McCrory Place, Suite 175
Orlando, FL 32803
Tel: (407) 603-6031
Email: ed@normandpllc.com
Email: christopher.hudon@normandpllc.com

*Counsel for Plaintiff and the Proposed Settlement Classes*

29